**SCHEXNAILDRE et ux. v. BLEDSOE, et al.**

**No. 17,282.**

Court of Appeal of Louisiana. Orleans.

Feb. 26, 1940.

Rehearing Denied March 25, 1940.

46

Elias Bowsky, of New Orleans, for appellants.

H. L. Hammett, of New Orleans, for appellees.

McCALEB, Judge.

On January 18, 1939, at about 1:20 A. M., an intersectional collision between two automobiles occurred at the downtown lakeside corner of Esplanade Avenue and North Broad Street in the City of New Orleans. The vehicles involved were a Pontiac Coach owned by Sylvan H. Mounes, which was being driven by Mrs. Lillian Picou, wife of Chenet J. Schexnaildre, and a Chrysler Sedan, owned and

operated by LeRoy D. Bledsoe of Atlanta, Georgia. The plaintiffs' car, which we will hereinafter refer to as the Mounes car, was being driven in the downtown roadway of Esplanade Avenue in the direction of Lake Pontchartrain and the Bledsoe automobile was proceeding in the lakeside roadway of North Broad Street in the direction of Canal Street or uptown. When the Mounes car arrived at a point slightly over the center of the downtown lakeside roadway of North Broad Street, which crosses Esplanade Avenue at right angles, it was struck a violent blow on its right rear wheel and fender by the front bumper and right front fender of the Bledsoe car. As a result of the collision, the Mounes car was knocked off balance, turned over on its left side and then upside down and came to rest in that position in the lower lakeside roadway of Esplanade Avenue about 25 or 30 feet from the point of impact.

Prior to the accident, Mr. Mounes, together with Mr. and Mrs. Schexnaildre, Mr. and Mrs. Steven H. Rybiski and a Miss Margaret E. Zinser, had left a restaurant near the Shushan Airport known as "Happy Landing" where they had eaten a seafood supper and they were returning to their homes via Esplanade Avenue when the mishap took place. In the front seat of the Mounes car were Mr. and Mrs. Schexnaildre and Miss Zinser. Mr. and Mrs. Rybiski and Mr. Mounes were seated in the rear.

As a consequence of the accident, Mr. and Mrs. Schexnaildre, Mr. and Mrs. Rybiski and Mr. Mounes received bodily injuries and, in addition thereto, the Mounes car sustained considerable damage. Mr. and Mrs. Schexnaildre brought the present suit against Mr. Bledsoe, the owner and operator of the other car involved in the collision, his alleged employer, the Polk Musical Supply Company, Inc., of Atlanta, Georgia, and his liability insurance carrier, the Lumbermen's Mutual Casualty Company, for the damages they sustained, alleging that the accident was caused solely through the negligence of Bledsoe who, they aver, operated his automobile into the intersection at an excessive rate of speed without having it under control and without exercising a proper lookout. Mrs. Schexnaildre seeks recovery of the sum of $22,000 and Mr. Schexnaildre claims $3,805.34. Similar separate suits for recovery of damages were also filed against the defendants by Mr. and Mrs. Rybiski and Mr. Mounes.

The defendants appeared and filed a joint answer to the suit of Mr. and Mrs. Schexnaildre. Similar answers were also filed by them to the suit of Mr. and Mrs. Rybiski and to that of Mr. Mounes. In their answers, the defendants admit the happening of the accident but deny any and all responsibility on their part for the consequences thereof. They specially plead that the accident was entirely due to the negligence, lack of skill and disregard of the traffic ordinances of the City of New Orleans on the part of Mrs. Schexnaildre who, they aver, was the agent of her husband and for whose conduct her said husband is legally responsible; that she was at fault in that she approached the crossing at a reckless rate of speed; in that she failed to accord the defendant Bledsoe his superior right of way under the rules of the road and the city traffic ordinance and in that she failed to take the usual and necessary precautions to avoid the accident by stopping or by slowing down the speed of her car. They also assert, as an additional ground of defense, that all of the plaintiffs were negligent because of the fact that the Mounes car was overcrowded, containing six people, which interfered with the proper management and operation thereof and that the plaintiffs had been on a beer party and were under the influence of alcohol at the time of the accident. The defendants further deny that the Mounes car had been proceeding on Esplanade Avenue prior to the occurrence and they aver that, on the contrary, the automobile had been traveling on the riverside roadway of North Broad Street in the direction of downtown and that when it arrived at the intersection of Esplanade Avenue the driver thereof proceeded to make a left hand turn into the lower side roadway of Esplanade Avenue in violation of the city traffic ordinance which prohibits vehicles from turning left at that intersection. They further deny that Bledsoe was an employee of the Polk Musical Supply Company, Inc., and that he was acting within the scope of his employment at the time of the accident. They admit, however, that Bledsoe was the owner and operator of the Chrysler car involved and that the defendant, Lumbermen's Mutual Casualty Company, had issued a policy of public liability insurance upon the automobile. In addition

to the foregoing, the defendant Bledsoe filed a reconventional demand in this suit claiming the sum of $246.20 for the damage sustained by his automobile in the collision which he maintains was attributable to the negligence of Mrs. Schexnaildre.

When the cases were thus put at issue by the answers of the defendants, they were consolidated for the purposes of trial. After a hearing on the merits of the controversies, the district judge, being of the opinion that the driver of the Mounes car was guilty of negligence and that Bledsoe's fault was slight, dismissed, by separate judgments, this suit as well as the actions brought by Mr. and Mrs. Rybiski and Mr. Mounes. He also dismissed the reconventional demand filed by the defendant Bledsoe in this matter. Mr. and Mrs. Schexnaildre, as well as the plaintiffs in the other separate suits, have appealed from the adverse decision of the court below.

Since the defendants have interposed a number of special defenses, it is pertinent, at the outset, to dispose of those points which are not supported by the evidence.

■ The defendants aver in their answer that, prior to the accident, the Mounes car was being operated on the lower side of North Broad Street and that the driver thereof executed a left hand turn into the Esplanade Avenue intersection in violation of the city traffic ordinance. No evidence of probative value has been presented by them to sustain this allegation. The defendant Bledsoe, in his testimony, concedes that he did not see the Mounes car approaching the intersection and that he first observed it just as he arrived at the corner when "they seemed to just loom suddenly out of nowhere". The other defense witnesses, Welton Seruntine and Joseph M. Bowab, readily admit that they did not see the Mounes car prior to the collision. On the other hand, the testimony given by the six occupants of the car, as well as that of Edward L. Shields, a disinterested eyewitness to the accident, establishes beyond doubt that the Mounes automobile had, previous to the collision, been proceeding in the downtown roadway of Esplanade Avenue and that it did not approach from the riverside roadway of North Broad Street.

■ The defendants also assert that the occupants of the Mounes car were intoxicated. The record discloses that Mrs. Schexnaildre, the driver of the car, does not drink alcoholic beverages and that the other passengers therein had each consumed approximately two 12-ounce bottles of beer at the restaurant called "Happy Landing". The evidence does not contain the slightest suggestion that any of them were other than completely sober at the time of the accident or thereafter.

■ We also reject the defendants' contention that recovery should be barred because the Mounes car was overcrowded. It is true that three persons, Mr. and Mrs. Schexnaildre and Miss Zinser, occupied the front seat of the car. There is nothing, however, to show that the overcrowding interfered with the safe operation of the vehicle by Mrs. Schexnaildre or that it was a contributing factor to the accident.

Elimination of the foregoing contentions of the defendants bring us to a discussion of the cause of the accident. Esplanade Avenue, which is one of the main traffic arteries of the City of New Orleans, is a broad, paved thoroughfare consisting of two roadways which are separated by a small neutral ground approximately four feet in width. The upper roadway, which carries vehicular traffic proceeding in the direction of the river, is 26 feet, 2 inches wide and the lower roadway, for traffic going towards the lake, has a width of 27 feet, 4 inches. Esplanade Avenue intersects with North Broad Street at right angles. North Broad Street, like Esplanade Avenue, is a broad, paved boulevard having two vehicular roadways which are separated by a wide neutral ground. The riverside roadway of North Broad Street is devoted to the use of traffic proceeding from Canal Street in the direction of Gentilly Terrace and the lakeside roadway is traversed by traffic going towards Canal Street. The roadways are 22 feet, 4 inches wide and the neutral ground separating them is 54 feet wide. The intersection of Esplanade Avenue and North Broad Street is very large and there are no obstructions at or close to the crossing which would prevent a motorist approaching from either street from having a full and complete view of it. The intersection is controlled by traffic semaphore lights which operate from green to red during the daytime and until twelve o'clock at night. After midnight, the alternate operation of the lights is discontinued and a stationary caution signal or amber light is displayed to motorists approaching the

intersection. This was the situation prevailing on the morning of the accident which occurred at 1:20 A. M.

Mrs. Schexnaildre testified, in substance, as follows: That she was driving along the lower roadway of Esplanade Avenue at a speed of approximately 25 miles per hour; that, as she reached the crossing, she looked to her left and, observing that the riverside roadway of North Broad Street was clear of traffic, she continued forward; that she looked down the lakeside roadway of North Broad Street and noticed the Bledsoe car about a block from the Esplanade Avenue intersection; that, in view of the great distance it was from the crossing, she believed that she had ample time to traverse the lakeside intersection long before the other car would reach it, and that she accordingly continued the forward movement of her car at 20 miles per hour. She further states that, after she had pre-empted the riverside roadway of North Broad Street and was at a point approximately half way across the North Broad Street neutral ground, she again observed the Bledsoe car; that it was then about a half block from the intersection; that, at that time, she was only about 25 feet from the entrance of the lakeside roadway and that, under the circumstances, she felt that she could safely traverse the intersection before the oncoming car reached it. She further relates that, after she had entered the crossing and was past the center of the roadway, the front of the Bledsoe car struck violently against the right rear fender and wheel of the Mounes car. She says that, because of the severity of the impact, the Bledsoe car must have been driven into the intersection at a high rate of speed, which she estimates to be 40 miles per hour.

The evidence of Mrs. Schexnaildre is substantially corroborated by the statements of her husband, Mr. Schexnaildre, Miss Zinser and Mrs. Rybiski, all of whom were passengers in the Mounes car. The other passengers, Mr. Rybiski and Mr. Mounes, were engaged in conversation on the rear seat of the car and did not see the Bledsoe automobile prior to the accident.

In addition to the foregoing testimony, the plaintiffs produced a disinterested eye-witness named Edward L. Shields who was sitting on the lower riverside curbing of Esplanade Avenue and North Broad Street at the time of the accident. He declares, in substance, that he first saw the Mounes car being driven on Esplanade Avenue when it started across the downtown riverside roadway of North Broad Street; that he did not see any other automobile until the Mounes car had proceeded all the way across the intersection and was half way across the downtown lakeside roadway of North Broad Street and that, when it reached that point, it was struck on its rear wheel and fender by the front of the Bledsoe car which had come into the crossing at a speed of approximately 30 or 40 miles per hour. He further states that he first saw the Bledsoe car when it had arrived at a point about 30 feet from the entrance of the intersection and he deduces that it was traveling at a speed of 30 to 40 miles per hour because of the violence of the blow received by the Mounes car. He asserts that, after the impact, the Bledsoe car continued forward in the direction in which it was traveling and that, when it came to rest, the greater portion of it was in the upper roadway of Esplanade Avenue facing towards Canal Street.

The plaintiffs further demonstrated the fact that the Bledsoe car evidently came into the intersection at a high rate of speed for it is shown by the police and other witnesses, who arrived at the scene after the occurrence, that there were skid marks extending from North Broad Street into the intersection for a distance of between 15 and 18 feet which were made by Bledsoe when he jammed on his brakes in an effort to avoid the collision.

The only eyewitness to the accident produced by the defense was the defendant Bledsoe. He states that, when he was driving along North Broad Street and approaching the Esplanade Avenue crossing, he does not know at what speed he was traveling but he supposes he was going about 25 or 30 miles per hour; that, when he arrived at the intersection, he looked in both directions and did not see any traffic at all on Esplanade Avenue; that, just as he got into the intersection, the Mounes car "seemed to just loom suddenly out of nowhere"; that, at that time, it appeared to be just about in the middle of the neutral ground and "it appeared to hesitate—I wasn't sure—and I started to go ahead." He further says that, when he saw that the Mounes car was going ahead and was not going to stop, he applied his brakes and could not stop his car "and

so the only thing left to do was to try to beat it across, which I did".

■ We think that Bledsoe's statement is, on its face, a confession of fault on his part. He does not know at what speed he was traveling and he did not see the Mounes car come into the intersection notwithstanding the fact that he had a clear and unobstructed view of the crossing for at least a block before he reached it. It is fairly well established by the witnesses for the plaintiffs that, when the Mounes car arrived at the entrance of the riverside roadway of North Broad Street, the Bledsoe car was approximately 300 feet from the lakeside crossing. Why Bledsoe did not see the Mounes car at that time is not explained by him and there can be no doubt that, if he had been exercising a proper lookout, he would have not only noticed its presence but that he was in a position to retard his speed and allow it to cross the intersection long before he arrived there. Indeed, a careful review of all the evidence has convinced us that Bledsoe drove his car into the intersection at a high rate of speed without paying any attention whatever to oncoming traffic at a time when the Mounes car had already entered the lakeside roadway of North Broad Street and had almost completed the crossing.

■ Since we deduce that Bledsoe was at fault, the plaintiffs are entitled to recover provided that they were not guilty of contributory negligence. The plaintiffs maintain that the issue of contributory negligence has not been properly pleaded by the defendants in their answer. Our recent decision in Althans v. Toye Bros. Yellow Cab Company, La.App., 191 So. 717, is relied on in support of the proposition. However, we find it unnecessary to decide this case on the question of proper pleading because we are satisfied, from all of the testimony adduced, that Mrs. Schexnaildre was free from fault.

It was the opinion of our brother below that Mrs. Schexnaildre was negligent because she drove into the lakeside roadway crossing of North Broad Street after she had previously discovered the presence of the Bledsoe car which was then about a block away. We cannot concur in this view. When Mrs. Schexnaildre saw the Bledsoe car, she was only 75 feet from the crossing. The Bledsoe car was, at that time, some 300 feet down North Broad Street. She states that she believed that she could easily traverse the 75 feet before the other car reached the intersection. This seems to us to be a reasonable deduction provided, of course, that she was not aware of the fact that the other car was being operated at such a high and reckless rate of speed as to cause a prudent driver to believe that it would be unsafe to proceed. Counsel for the defendants tried, unsuccessfully, several times during the cross-examination of Mrs. Schexnaildre to have her admit that she knew that the Bledsoe car was being operated at a fast rate of speed at the time she saw it approaching the intersection. In answer to the questions propounded to her, she denied that she was aware of its speed at the time she saw it but she calculated that, in view of the severe blow received by the Mounes car, it must have been traveling very rapidly.

■ It is well established that motorists driving on city streets and over intersections which are protected by traffic semaphores are entitled to assume, at least to some extent, that pedestrians or approaching traffic will observe the law. See Buckley v. Featherstone Garage, Inc., 11 La.App. 564, 123 So. 446; and Jones v. American Mutual Liability Insurance Company, La.App., 189 So. 169. This is particularly so where the view of the crossing, which is afforded to the drivers of the vehicles, is unobstructed. It was only reasonable for Mrs. Schexnaildre to assume, in the instant case, that, when Bledsoe was a block away, he saw the Mounes car come into the riverside roadway of the North Broad Street crossing; that he realized that it would reach and preempt the lakeside intersection before he arrived there and that he would exercise prudence commensurate with the surrounding conditions and circumstances. The fact that he was careless cannot be injected as a valid argument to absolve him unless his reckless driving and inattention was or should have been obvious to the other driver. We do not think the record justifies a holding that Mrs. Schexnaildre was or should have been aware of the rapid speed at which Bledsoe was traveling and we therefore conclude that the plaintiffs are entitled to recover.

■ Counsel for the defendants also argue that, since the Bledsoe car was approaching the intersection from the right, it had the right of way under the city ordinance and that Mrs. Schexnaildre

should have stopped and permitted it to proceed. The point is not well taken. The provision of the city ordinance relied upon applies only in cases where both vehicles arrive at the intersection at approximately the same time. Here, the Mounes car had not only preempted but had almost completed the crossing before the Bledsoe car reached it. See Bethancourt v. Bayhi, La.App., 141 So. 111; Smyth v. Hill Stores, Inc., 8 La.App. 246, and Laughlin v. Sullivan, 14 La.App. 490, 131 So. 687.

 Since it is our opinion that the accident was caused solely by the negligence of Bledsoe, we pass on to a consideration of the nature and extent of the injuries suffered by the plaintiffs. It is apt to remark, however, that, of the three parties defendant to the suit, only Bledsoe, the owner and operator of the Chrysler Sedan, and his insurer, Lumbermen's Mutual Casualty Company, are liable. The Polk Musical Supply Company was joined as a party defendant on the theory that, at the time of the accident, Bledsoe was in its employ and was engaged in the performance of his duties as employee. No proof was submitted to sustain the allegations of plaintiffs' petition respecting that defendant. Accordingly, the suit, as against it, must be dismissed.

The physical injuries sustained by Mrs. Schexnaildre as a result of the collision are described at great length by her physician, Dr. Samuel Sternberg, who treated her for several months after the accident. A summary of his testimony convinces us that, while Mrs. Schexnaildre received injuries which were most painful and totally incapacitated her for at least a month, they were neither serious nor permanent in nature. In fact, her hurts may be described in a few words as being general contusions and bruises of the entire body and head.

Dr. E. A. Ficklen, who was employed by the defendant insurance company to make an examination of Mrs. Schexnaildre, gives a very fair and complete description of her visible injuries in the following language:

"There was a small reddened area, slightly smaller than a dime, in the left temporal region,—that is, in the region which lies behind the orbit and in front of the ear. She complained that this reddened area was quite sensitive to pressure. She next showed me the left ring finger, which was said to have been sprained, but at the time, it showed no signs of injury. The right leg was then examined. It was much discolored in its upper two-thirds. There was evidence that there had been a severe contusion over the crest of the tibia, or shin bone. Just below the knee and on the inner surface of the leg, there was a collection of blood about the size of a silver dollar. Just below this, there was an irregular band of discoloration, evidently due to the escape of blood into the tissues, extending downward to a point two inches above the ankle. There was also a discolored area about the size of a 50-cent piece over the head of the fibula, which is the small bone, and the outer side of the leg, just below the knee. In addition, there seems to have been—this is judging from her history and Dr. Sternberg's account—a contusion of the left hip, of the left lumbar region and of the left lower chest over the 10th, 11th and 12th ribs. She was complaining of nervousness, headache and pain in the right leg, chiefly, but the other regions mentioned were causing her some discomfort."

In addition to the contusions and bruises sustained by Mrs. Schexnaildre, she also claims that she suffered a cerebral concussion which resulted in the formation of a blood clot upon her brain. X-ray pictures were taken of her head about a month after the accident. These pictures were negative with respect to fractures of her skull. Dr. Ernest E. Allgeyer, an eye specialist, who was called in consultation by Dr. Sternberg after constant complaint by Mrs. Schexnaildre of pains in her head, stated that, in his opinion, she had received a severe concussion of the brain.

Dr. Sternberg is of the view that a blood clot was formed on Mrs. Schexnaildre's brain as a result of the blow she received. In treating her for this ailment, he prescribed morphine, aspirin and codeine and he administered to her, intravenously, concentrated solutions of glucose on 18 different occasions. He says that the infusions of glucose tended to lessen the pressure of the spinal fluid in her brain and that it temporarily relieved the pressure of the blood clot.

It is the opinion of Dr. Ficklen that Mrs. Schexnaildre did not suffer a brain lesion and that no blood clot was formed in her brain as a result of the blow she received. He testifies that the conclusion arrived at by Dr. Sternberg cannot be certain without some positive evidence to support it—that is, (1) a neurological examination showing some changes in the muscle groups or re-

flexes in some part of the body of the patient, or (2) by an examination of the cerebro-spinal fluid showing blood in that fluid with increased tension, or (3) by X-rays of the skull after injection of air in either the ventricles or in the space around the brain. He declares that, since none of the foregoing recognized tests were made, it is impossible to determine that Mrs. Schexnaildre had a blood clot on her brain and he expresses the opinion that the pains in her head, of which she complains, are purely nervous in origin.

Because of the conflict of opinion between the medical experts in the case, we do not think that we would be justified in holding that Mrs. Schexnaildre had a blood clot on her brain. Nevertheless, we are satisfied that her hurts were quite painful and that the severe headaches, from which she suffers, are partially attributable to the accident. After a careful consideration of her injuries and the suffering she has endured, we feel that an award in her favor for $1,250 will fully compensate her.

The injuries received by Mr. Schexnaildre consist merely of contusions and bruises. It is not shown that he was incapacitated for any length of time and we think that an award of $250 for his pain and suffering is adequate.

In addition to the claim for his own personal injuries, Mr. Schexnaildre alleges that, as a result of the accident, he has sustained the following expenses: Medical bill for services rendered to him by Dr. Samuel Sternberg $40; hospital bill of Touro Infirmary for services rendered to Mrs. Schexnaildre $14.14; drug bill for Mrs. Schexnaildre $9.20; medical bill of Dr. Aldea Maher for Mrs. Schexnaildre $7; additional household help for Mrs. Schexnaildre from the date of the accident to the date of filing of suit $90; medical bill of Dr. Samuel Sternberg for services rendered to Mrs. Schexnaildre $605, and medical bill of Dr. Allgeyer for services to Mrs. Schexnaildre $40.

Of the foregoing, we find that the hospital bill of Touro Infirmary in the sum of $14.14, the $9.20 drug bill for Mrs. Schexnaildre and the $7 medical bill of Dr. Aldea Maher are amply supported by the evidence. Recovery will therefore be allowed for these items.

The $40 bill of Dr. Allgeyer for services rendered to Mrs. Schexnaildre is for eight treatments at $5 each. Since Dr. Allgeyer is a specialist, we believe that the fees charged by him are fair. Recovery for this item of expense is therefore allowed.

It is also shown that, since the happening of the accident, Mrs. Schexnaildre has been unable to give constant attendance to her household duties and that, for this reason, it has been necessary to engage additional help. The amount of $90 for this household expense appears to be reasonable and we accordingly grant reimbursement to Mr. Schexnaildre for that item.

We find, however, that the bills of Dr. Samuel Sternberg for services rendered by him to Mr. and Mrs. Schexnaildre are grossly excessive. The doctor testified that he treated Mr. Schexnaildre on eight different occasions at his office. For each office visit, he makes a charge of $5. We think that a fee of $3 per visit is sufficient. A recovery of $24 will therefore be permitted for this item of expense.

With respect to Dr. Sternberg's bill for the sum of $605 for treating Mrs. Schexnaildre, we notice that he has made a charge of $100 for visiting her at the Charity Hospital on the day of the accident and that he has charged $10 for each home visit and $5 for each office visit. It suffices to say that these fees are most unreasonable. We believe that a fee of $5 for home visits and $3 for office visits will fully compensate Dr. Sternberg. We also reduce his charge of $100 for the treatment he gave to Mrs. Schexnaildre on the date of the accident to the sum of $10. On this basis, Mr. Schexnaildre is entitled to recover the sum of $275 for the services rendered to his wife by Dr. Sternberg.

For the reasons assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that there be judgment herein in favor of Mrs. Lillian Picou, wife of Chenet J. Schexnaildre, and against the defendants LeRoy D. Bledsoe and Lumbermen's Mutual Casualty Company, in solido, for the full sum of $1,250 with legal interest thereon from judicial demand until paid and for all costs and that there be judgment herein in favor of Chenet J. Schexnaildre and against the defendants LeRoy D. Bledsoe and Lumbermen's Mutual Casualty Company, in solido, for the full sum of $709.34 with legal interest thereon from judicial demand until paid and for all costs. It is further order-

ed, adjudged and decreed that plaintiffs' suit, as against the defendant Polk Musical Supply Company, Inc., be dismissed at their cost.

Reversed.

Court of Appeal of Louisiana, Orleans.
Feb. 26, 1940.

Rehearing Denied March 25, 1940.

Elias Bowsky, of New Orleans, for appellants.

H. L. Hammett, of New Orleans, for appellees.