This is a suit by Alfred Gebbs against Samuel Anderson, Braden Brothers Cab Company and their insurer, the Independent Cab Operators Association, Inc., for $299 damages for personal injuries sustained by him as a result of a collision between a wagon driven by him and a taxicab owned by the cab company and operated by Anderson.
In his petition Gebbs alleges that on July 6, 1940, at 5:15 a.m., he was driving a City of New Orleans garbage wagon, drawn by two mules, down North Galvez Street in the direction of Dumaine Street; that when the wagon had reached the middle of the block on Galvez Street between Orleans and St. Ann Street, it was struck in the center of the left side by a Ford Sedan taxicab driven by Samuel Anderson, who, at that time, was acting within the scope of his employment by the Braden Brothers Cab Company. Gebbs further alleges that, at the time of the accident, he was driving the wagon on the right side of the street, as near to the gutter curb as possible; that Anderson, the operator of the taxicab, was proceeding up North Galvez Street in the opposite direction and, instead of remaining on the proper side of the street, negligently and imprudently drove the taxicab into the side of the wagon and knocked him, Gebbs, to the ground.
Stanley Boudreaux, a fellow-employee of Gebbs, was riding on the wagon at the time of the accident. As a consequence of the collision, he was also knocked from the wagon to the street and received bodily injuries. Boudreaux filed a similar separate suit for $299 damages against the same defendants. Boudreaux v. Anderson, La.App., 2 So.2d 679.
The defendants appeared and filed a joint answer to this suit of Gebbs. A similar answer was also filed by them to Boudreaux's suit. In their answers the defendants admit the happening of the accident, but deny that it was caused through the fault of Anderson, the taxicab driver. They further deny that at the time of the accident the wagon was proceeding on the right side of the street near the curb and they aver that, on the contrary, the wagon was being driven near the center of the street. Defendants also aver that when the driver of the taxicab saw the wagon proceeding along the wrong part of the street, he applied his brakes and stopped his machine, but that the wagon continued on until it collided with the stationary cab.
The defendants also pleaded in the alternative that both plaintiffs were guilty of contributory negligence — Gebbs in allegedly driving the wagon on the wrong side of the street and Boudreaux in permitting Gebbs to proceed in such manner.
The City of New Orleans intervened in both suits, claiming the amounts of compensation that it had paid to Gebbs and to Boudreaux respectively, and, also, the amounts expended for medical treatment for the two said employees.
The cases were consolidated for the purpose of trial. After hearing on the merits, judgment was rendered in favor of the City of New Orleans for the sum of $52.64 in the matter of Gebbs v. Anderson et al., and $48.35 in the matter of Boudreaux v. Anderson et al. In both of these matters the judgment was rendered in favor of the plaintiffs, Gebbs and Boudreaux, for the sum of $75 each. From these judgments plaintiffs have appealed, asking that the awards be increased to the sums originally prayed for. Defendants also appealed.
The plaintiffs produced three witnesses below — themselves and John Bradley, a City employee who was on another city wagon being operated immediately behind that involved in the collision.
Gebbs testified that he was driving the wagon at the time of the accident on the extreme right side of North Galvez Street, as near to the curb as possible; that he saw Anderson driving the taxicab from the opposite direction and that Anderson, instead of proceeding properly on his side of the street, "deliberately swerved his automobile and hit me in the center of my wagon and that threw me on the banquette".
Boudreaux stated that he was standing on the back of the wagon at the time of the accident; that it was proceeding close to the right curb; that he saw Gebbs "keep pulling his mules to the right hand side and then this fellow came running straight and come to find out he came around and swerved around and struck the wagon"; *Page 677 
that the impact caused him to fall to the pavement.
John Bradley testified that he was on another city wagon immediately following that operated by Gebbs and that he witnessed the entire accident. His version was substantially the same as that of Gebbs and Boudreaux, and, in answer to questions propounded by the trial judge, he gave the following answers:
"Q. Do you know how far the automobile was from Gebbs and Boudreaux when you first saw him? A. Before it hit, when I seen the automobile coming, it was at St. Ann Street, I seen the automobile but I didn't have any idea that that automobile would run into the man but to give you how far it was, it's not a very wide street and all I seen was when the man took and swung in and hit the wagon."
"Q. Was it very sudden? A. Yes, sir. I couldn't swear that the man was sleeping or drunk but it was done so quick, it looked like he lost control of it or he was sleeping on the job but I don't know for sure."
These witnesses were very thoroughly cross-examined by defendants' counsel.
It is contended by the defendants that the taxicab, driven by Anderson, had come to a complete stop on North Galvez Street and that, while it was standing motionless, the City wagon, proceeding on the wrong side of the street, ran into the left front fender of the taxicab. To substantiate their contention they placed upon the stand two witnesses, who state that they actually saw the entire occurrence. The first was Joseph Cozzo, who testified that on the morning in question he was in his automobile, driving immediately behind the taxicab; that the garbage wagon was directly in the center of the street and that it appeared to him that Anderson did not have sufficient room to pass and "applied his brakes and the car skidded and the garbage wagon being in the center of the street, it collided with the left front of the car".
The other witness was Walter Shelling, who stated that he saw the entire accident from the corner of St. Ann and North Galvez Streets, where he was standing. He testified that the taxicab skidded and came to a complete stop and that the City wagon then drove directly into the left front fender of the cab.
H.E. Braden, Jr., another witness for defendant, stated that he did not see the accident, but that he arrived upon the scene shortly thereafter; that when he arrived the two vehicles — namely, the cab and the wagon — were lodged together in the middle of the street, with the left front fender of the taxicab smashed into the middle of the left side of the wagon. He stated further that there was an excavation in North Galvez Street at this particular time and that it would have been impossible for the wagon to have driven on the extreme right side of the street because of this hole. His testimony clarifies the entire position that the defense is trying to make — namely, that it was impossible for the wagon to drive on the extreme right side of North Galvez Street and that the wagon was actually being driven on the left side. When further questioned, Braden stated that the excavation ran along the curb for the entire length of the block.
When the witness Cozzo testified, he stated that this particular excavation or hole was about ten feet long. He did not describe this hole very accurately and his testimony on this subject was very evasive. Shelling, defendant's other witness, states that the hole was about three and one-half feet long.
Such a discrepancy as to the material facts sought to be established by the defendants leads us to the belief that either Braden was not telling the truth, or that the two eyewitnesses were really not present at and did not see the accident.
Anderson, the taxicab driver, did not testify. Defendants explain his absence by stating that he was no longer in their employ and that they were unable to locate him.
The judge of the lower court heard and saw the witnesses and rendered judgment in favor of plaintiffs. Since plaintiffs' witnesses all testified that the accident happened in one way and all of defendants' witnesses testified that it happened in an entirely different manner, it is apparent that the judge a quo believed the testimony of plaintiffs' witnesses and rejected that of defendants.
We do not believe that it can be said that he was manifestly in error in coming to this conclusion. His finding is also substantiated by the physical facts. It appears that the left front fender of the taxicab was damaged as a result of coming into contact with the center of the left *Page 678 
side of the garbage wagon, which was drawn by a team of mules. It also appears that neither of the mules was injured. It is apparent that the wagon did not run into the taxicab, as contended by defendants, since it is inconceivable that under these circumstances the mules would not also have been injured. It is obvious, in other words, that, if defendants' version that the cab was stationary at the time is correct, the mules, or, at least, the fore part of the wagon would have been struck by the cab.
This brings us to a discussion of the quantum, since, in our opinion, the accident was caused solely by the negligence of Anderson, the driver of the taxicab, and hence we need not consider the plea of contributory negligence.
As we have stated, although Boudreaux and Gebbs have filed separate suits, the suits were consolidated for the purpose of trial. However, there are separate judgments. The appeals were filed in this court under separate numbers and were submitted as consolidated cases. Consequently, we have discussed both suits as one in this (Gebbs) case, and shall render a separate judgment in the Boudreaux case. Accordingly, we will discuss only Gebbs' injuries here and will reserve discussion of Boudreaux's injuries to the opinion in the Boudreaux case.
Defendants admit that, if they are liable, intervenor, City of New Orleans, is entitled to recover the full amount of compensation and medical expenses that it has claimed.
Dr. Holderith, the physician of Gebbs' employer, the City of New Orleans, testified that he treated Gebbs from July 7 through July 20, 1940, and that Gebbs made seven visits to his office and that he did not work during this period. He further stated that he treated Gebbs for concussion about the left hip and that his treatment consisted of the application of heat and the administering of sedatives to relieve pain.
The court below awarded $75 damages and, in addition, permitted intervenor, the City of New Orleans, to recover $52.64, which amount consists of $23 medical expenses and $29.64 for thirteen days' compensation paid by it to Gebbs. Gebbs was earning $3.50 per day, and therefore, since he received from the City, as compensation only 65% of that amount, or $2.28 per day, he has sustained an actual loss of earnings of $15.86. Such loss, no doubt, was included by the judge a quo in the award of $75. However, in view of the pain and suffering involved, we believe that the award is inadequate.
In Schexnaildre v. Bledsoe, La.App., 194 So. 45, where plaintiff's injuries consisted merely of contusions and bruises and it did not appear that he was incapacitated for any length of time, we awarded $250.
In Rybiski v. Bledsoe, La.App., 194 So. 53, $250 and medical expenses were awarded for injuries consisting of contusions and bruises and the loss of an inlay in a tooth.
We awarded $150 in Coulton v. Caruso, 195 So. 804, for contusions and bruises of the shoulder, back and ankle, and where disability was of about a ten-day duration.
Considering the amounts allowed in the above cases, we believe that an award of $150, in addition to the $52.64 awarded in the judgment below to intervenor, the City of New Orleans, and which plaintiff already has received, would be adequate.
The judgment appealed from, in so far as it runs in favor of Alfred Gebbs, is amended by increasing the amount thereof to $150, and, as thus amended, it is affirmed.
It is further ordered that the judgment in favor of intervenor, City of New Orleans, be and it is affirmed.
Amended and affirmed. *Page 679