DORE, Judge.
This is a suit ‘to recover from H. D. McKinster and ' his wife, individually and in solido, the sum of $36,875 for personal injuries and property damages sustained by the plaintiff, Samuel Webb Lambert, in a collision between his 1938 two-door Ford automobile, which he was driving, and the *514 1939 Oldsmobile of the defendants, which was being driven by Mrs. McKinster alone. The collision occurred at the intersection of Broad Street, which runs East and West, and Kirkman Street, which runs North and South, on the morning of September 23, 1945, at about 8:30 o’clock. The plaintiff alleges that the accident was caused entirely through the negligence and carelessness of the defendant, Mrs. McKin-stér, particularly in entering the intersection while traveling East on Broad on a red traffic light, and thereby running broadside into the left middle of plaintiff’s Ford automobile.
The demand against the defendant, H. D. McKinster, is based upon the proposition that Mrs. McKinster at the time of the accident was driving the automobile belonging to the community, with the expressed or implied consent of her husband, on an errand or mission with which the community was concerned, and, therefore, was acting as an agent of the community, and that the husband, as head and master of the community, is liable for the tort committed by his wife while so operating the car.
The defendants answered, denying that Mrs. McKinster was guilty of any negligence and averring positively that the accident was caused solely by gross negligence of plaintiff Samuel Webb Lambert, particularly in entering the intersection while the light was red for him, and assuming the position of plaintiffs in recon-vention, Mr. McKinster claims damages to the automobile and for the medical and doctor’s bills of his wife resulting from the accident, and Mrs. McKinster claims damages for her personal injuries.
Defendants further allege that Mrs. Mc-Kinster was on a mission purely and entirely of her own, and that, therefore, defendant H. D. McKinster cannot be held liable.'
In the alternative, the defendants plead contributory “ negligence on the part of plaintiff, barring his recovery.
After the trial of the case, the Lower Court, for written reasons assigned, rendered judgment in favor of plaintiff and against the defendant, Mrs. “Jimmie” Mc-Kinster, for the sum of $1,968, and rejected the demand against H. D. McKinster, her husband, as well as the reconventional demand of Mr. and Mrs. McKinster. Plaintiff has • appealed, praying that the judgment be amended so as to impose liability on Mr. McKinster as well as on Mrs. McKinster, and the quantum should be increased by some $4,000. The defendant, Mrs. “Jimmie” M. McKinster, has answered the appeal, praying that the judgment against her should be reversed and set aside and that the plaintiff should be condemned to pay all costs.
There are three main questions to be considered in this case. First, was Mrs. Mc-Kinster guilty of negligence which was the sole cause of the accident, as found by the trial judge? Second, if that be true, was she at the time of the accident, on a mission of her own, or was she on a mission on behalf of the community? Third, if the conclusions of the trial judge are correct with reference to liability, did he correctly assess the quantum of damage, or should it be increased as prayed for by the plaintiff? It may be noted that the defendant in his brief does not complain of the quantum, but on the contrary, insists that it is very fair if liability against the defendant or defendants be found.
These three questions are purely questions of fact. As to the cause of the accident, the large preponderance of the evidence shows that the sole and only cause was the failure of Mrs. McKinster to keep a proper lookout and entering the intersection on a red light after it had been preempted by plaintiff Lambert, who had entered the intersection properly on a green light. It is clearly shown that defendant Mrs. McKinster struck the automobile of plaintiff Lambert on the left side thereof, in the center, a very strong blow, as shown by the pictures of the car. Lambert was traveling North and she was traveling East, and the collision occurred slightly South of the North center line of Broad Street, and East of the center line of Kirkman Street, and after the collision, the Lambert car was facing Northwest and the McKinster car continued some ten feet towards the Southeast.
*515 Mrs. McKinster testified that she was watching the light and that within about a half block therefrom, noticing that it was red, she slowed down, and as she approached the intersection, seeing that it was green, she proceeded to accelerate her motor and continuing. We believe that she made a mistake, probably due to the fact that traveling East at 8:30 in the morning on a bright sunshiny day, she was blinded and could not really tell whether the light was green or red. We are borne out in that belief by the testimony of witness Edward M. Ball, who arrived at the scene immediately after the accident, and who states that due to the sun, he was unable to see the light except by coming to a full stop and shading his eyes. Moreover, there is the testimony of the plaintiff and his wife, denied by Mrs. McKinster, however, to the effect that she made the admission to them while discussing the collision some days after its occurrence, that she really did not definitely know whether the light was green or red on account of facing the sun. The only corroboration of defendant’s theory that she entered the intersection while the light was green for her, is the testimony by deposition of W. T. Rayford, who states that at the time of the collision he was parked at Kirkman and Broad Streets on the North side of Broad and the West side of Kirkman, waiting to turn to the East on Broad; that his reason for being stopped was to wait for the light •to turn from red to green. In other words, according to his testimony, the light was green for Mrs. McKinster at that time and red for plaintiff. He claims that he was parked in a LaSalle automobile, and at the time he made no statement to any one and did not give his name as a witness, and there is no showing of any kind of his having actually been at the scene. On the other hand, we have the testimony of Mr. Tor-bert Slack, a landscape architect for the State Highway Department, and a resident of Lake Charles since 1920, to the effect that he was parked or approaching the intersection at the spot where Rayford claims to have been, and that there was no other car present there, and that as he approached the intersection, the light turned from red to green for him, and just prior thereto, he had seen Mrs. McKinster approaching from the West, traveling East on Broad. His testimony flatly contradicts that of Ray-ford and there is no question that Mr. Slack was at the scene. There is some other corroboration with reference to the .light by a taxi driver, and we believe that the trial judge was correct in his conclusion with reference to the light, that plaintiff entered the intersection on a green light, whereas, defendant, Mrs. McKinster, entered it on a red light, is well established by the “credible” ’testimony. There is no showing that plaintiff Lambert was in any way negligent and we must believe that he entered the intersection cautiously and in no way could have avoided being run into by Mrs. McKinster. He could not very well anticipate that she would violate the traffic light. We therefore conclude that the sole cause of the accident was the negligent driving of Mrs. McKinster.
With reference to the second question as to whether or not she was on a mission for the community, we do not feel that it is necessary to indulge in a long discussion of the testimony on that score. The trial judge believed the testimony of the defendants, and we see no reason for not doing the same. The fact as established by their testimony is that on the morning of the accident, at about 6:30, Mrs. Mc-Kinster listened to a sermon by a minister in the City of Beaumont, and after the sermon, upon hearing the announcement that the same minister, whom she admired greatly, would speak at a certain place in Beaumont at 10 o’clock that morning, she suggested to her husband that they drive over there to listen to him. He was not disposed to do so, and as a result, they had a discussion, and in the meantime, he de.cided to go to the rest room. They were living in a trailer camp and the rest room was in the main building, some one hundred yards away from their camp. The husband went there to take a bath, shave, change clothes, and while he was gone, being somewhat upset because he had not agreed to take the Beaumont trip, she got in the car and drove to town, she says, to regain her composure and think the matter over. She *516 finally parked, on Ryan Street near Broad, and went into Walgreen’s Drug Store, purchasing cosmetics, and thereafter did some “windowshopping”, and finally decided to return to the camp', and she was on her way back when the collision occurred.
The Supreme Court in the case of Adams v. Golson et al., 187 La. 363, 174 So. 876, 879, stated: “It is our opinion, therefore, that in order to hold the husband liable as head and master of the community for torts committed by his wife within the meaning and contemplation of the provisions of article 2986 of the Revised Civil Code, it would have to be shown affirmatively that she was expressly or impliedly authorized to and was, at the time of the commission of the act, actually attending to the affairs or business of the community.”
We reach the same opinion in the case at bar.
With reference to the quantum of damages, the third question involved, there is no question that the item of $375 for'the automobile was properly proved, as well as the item of $93 for the doctors and hospital bills. The only questionable item is that of $1,500 for pain, suffering and loss of earnings, all of which are lumped in that one item. Apparently the trial judge approximated the loss of earnings at the sum of $500 and granted an additional $1,000 for the pain and suffering. On the question of loss of earnings, it was shown that the accident happened on September 23, 1945 and that thereafter, the plaintiff was unemployed until about October 17th. He then continued to work until some time in May, 1946, at which time he began to have trouble with his heart and with his teeth, and stopped his work at the' trailer camp where he was employed. On or about January 1, 1947, he went back to the camp and continued to work there until it was closed. Meanwhile, it appears that he engaged in carpentry work here and there, although he claimed that he was unable, and is still unable t'o do' any hard work, and in that respect, is corroborated by his brothers and other 'witnesses. It is pretty difficult to' determine accurately exactly what his loss of wages amounts to, based on this evidence. It is true that his salary at the trailer camp was $200 per month, but aside from that job, the evidence is not clear as to what his earnings are or were after the accident. On the question of personal injuries, it is shown that he was treated first by Dr. Goldsmith, and that no serious objective symptoms were found by this doctor and he was released after a very short treatment. Right at the time of the accident there is considerable evidence to the effect that he spat up blood and the implication that the blood came from an internal injury. There is no doubt that the plaintiff was struck rather severely on his chest as a result of the collision; that is, he struck his chest on the windshield and on the front panel of his car when his car was struck by Mrs. McKinster.
After the first treatment by Dr. Goldsmith and hospitalization for some two days, he stayed at his sister’s home for approximately a week or longer, and she claims that for several days he continued to spit up blood. Later, after he had worked at the camp again, he complained of being in a nervous condition (nervous heart), and was thereafter treated by Dr. DiGiglia, who attributes his condition possibly to the accident. His testimony on that score is somewhat vague. About the only conclusion we can reach is that the plaintiff was severely jolted in this collision, and undoubtedly suffered considerable pain, but the fact remains that there is no positive showing of any permanent injury. X-rays failed to reveal any broken bones or injured tissue.
 Under the circumstances, we can find no error in the trial judge’s estimating the personal injuries and loss of time in the sum of $1,500; the two, as a matter of fact, go more or less, hand in hand. As stated before, the defendants do not complain' of the amount of the award. As far as increasing the award, besides the fact that the evidence is vague as to the amount of injury and pain sustained, as well as to the amount of time lost from work, we have the principle' of law that the ability of the defendant to pay must also be considered. -Bearing that'principle in mind, and the fact *517 that Mrs. McKinster has no separate estate, and her husband, an insurance salesman, appears to make only a living, together with the actual facts of injury, loss of time, and damage, we are of the opinion that the award is ample.
For these reasons, the judgment appealed from is affirmed.
J. CLEVELAND FRUGE, J., sitting ad hoc.