BAILES, Judge.
This tort action was instituted by Nelo J. Hebert, Sr., against United Gas Pipe Line Company (United) to recover damages allegedly suffered by plaintiff by reason of defendant’s construction of a floatation canal or ditch in Terrebonne Parish. Plaintiff claims damages in the amount of $41,800. After trial, the Court a quo awarded him a judgment against the defendant in the sum of $17,785, plus legal interest from date of judicial demand until paid. United Gas Pipe Line Company has appealed. For the reasons enunciated below, we find the trial court committed reversible error as a matter of law in finding that the digging of the floatation canal was the proximate cause of plaintiff’s alleged damages. The judgment of the trial court is reversed.
Plaintiff alleges that he leased from one Louis Pellerin certain land in Terrebonne Parish for grazing purposes, and that shortly after confection of the lease in July or August, 1961, he placed 85 head of cattle on this pasture. Pie further alleges that on or about September 10, 1961, United cut a canal measuring 20 feet in depth and 60 feet in width across said leased land, and that thereby plaintiff’s herd of cattle was isolated from fresh water and from the main grazing area; that as the result of the digging of the canal, the cattle were forced to drink salt water and the area in which the cattle were isolated was soon exhausted of grass and that all of the herd died except for two cows.
Plaintiff itemizes his damages as follows:
81 head of cattle at $250 per head $20.250.00
10 head of young calves at $25 per head 250.00
One (1) Hereford bull 4 years old 1,000.00
One (1) Hereford bull, 2 years old 300.00
Mental anxiety, Anguish and pain 20,000.00
Total $41,800.00
The trial court, in its written reasons for judgment, inter alia, stated:
“ * * * we believe that the act of defendant in isolating the cattle was a proximate cause of the cattle being confined to a hazardous area; and that such action left upon defendant’s shoulders the burden to minimize damages; and that in failing to respond to plaintiff’s call for help, it failed to discharge its obligation. Hence, *73 we find that plaintiff’s loss was the result of both the act and the omission of the defendant.”
The trial court awarded plaintiff the sum of $12,785.00 as compensation for his cattle and the sum of $5,000.00 for plaintiff’s “great anxiety and mental anguish,” or a total award of $17,785.00.
The transcript of testimony conclusively demonstrates to us that the plaintiff was aware of defendant’s plan to construct the canal (with the permission of the land owner, Louis Pellerin) across the pasture land prior to the commencement of work, and the record further shows that defendant’s project engineer, Mr. Jack Jayroe, contacted the plaintiff about removing the cattle from the area in question shortly after the construction of the canal. His testimony follows (R. 64):
Direct examination by Mr. Christovich, defendant’s counsel:
“Q. Mr. Jayroe, are you familiar at all with whether a pipe line was laid by your company in the area of the LaTerre property and the property owned by Mr. Louis Pel-lerin?
A. Yes, sir.
Q. When was that pipe line laid ?
A. In 1961 and ’62, this year.
Q. When was the pipe line or the canal dug to lay that pipe line in with with respect to this particular property ?
A. September, 1961.
Q. Mr. Jayroe, did you have occasion during that time to see Mr. Nelo Hebert, the plaintiff in this case, at all?
A. Yes, sir.
Q. Where did you see Mr. Hebert?
A. At his place of business on Pointe au Chien road.
Q. What was the purpose of that visit? What was discussed at that time between you and Mr. Hebert ?
A. I had heard when the ditch was cut there had been some cows stranded over there. I heard it through one of the contractors men, and I wanted to check with Mr. Hebert to see if there was some way to verify it and see what we could do about it.
Q. Did Mr. Hebert advise you at that time that he did have some cattle to the North of the floatation canal?
A. Yes.
Q. Did you discuss any possibilities with him at that time of transporting those cattle?
A. I asked him if we could barge them across.
Q. Did Mr. Hebert show any interest with respect to any various methods of transporting the cattle across the canal ?
A. He told me he didn’t have any way of getting them across, he didn’t have any barge.
Q. Did he give you any indication he wanted to transport his cattle across ?
A. No, sir.
MR. HIMEL: (Plaintiff’s counsel)
I have no questions.”
The most significant fact established by the record in this case, and from the testimony of the plaintiff himself, is that the plaintiff made no effort whatever to remove his cattle, to provide feed and water, or in any way act as a prudent administrator or husbandman of his cattle and property. Based on his testimony of his inaction, we find that the plaintiff abandon *74 ed his cattle immediately upon the construction of the canal.
Mr. Himel, counsel for plaintiff elicited from him the following testimony:
“Q. You lost 83 head of cattle because of that canal?
A. Yes, sir. Yes, sir.
Q. What did you do after the canal was cut?
A. What you want me to do ? I couldn’t do anything. I couldn’t swim them across, and if I would have swimmed them across they was full of salt water and cattle after they drink that salt water two or three or four or five days you may as well put the buckshot on them. They’re no good, because salt water they can’t drink it.
Q. You took no action at all ?
A. Of moving them, no, sir, no, sir.

On cross-examination by defendant’s counsel, plaintiff admitted that he took no action to care for or to protect his cattle. From our appreciation of what occurred subsequent to the construction of the ditch, the cattle slowly and gradually starved to death from the lack of food or forage rather than quite suddenly from the lack of water. It is convincingly shown that the cattle died over a span of three to four months and that actually two cows survived. For the cattle to have survived for this period of time belies the plaintiff’s assertion as a fact that the cattle died of thirst.
 For the plaintiff to recover, he must establish by a preponderance of the testimony that the construction of the canal was the proximate cause of his alleged loss. We do not find it necessary to consider whether the defendant was negligent in digging' the canal and cutting plaintiff’s pasture into two parts because, even if we may assume the defendant was, in fact, negligent, we must find and do find that such action was not the proximate cause of the death of the cattle. The plaintiff testified that he had knowledge of the canal the day following its construction. And, as shown from his testimony quoted supra, he took no action whatever to try to feed his cattle or to otherwise' care for them. The plaintiff did not avail himself of the offer of help made by the defendant to transport the cattle across the canal. When questioned with regard to what action he took to save his cattle he stated that he “sued.” We find the plaintiff made no effort to save himself from the loss of his cattle or to minimize the possible loss of his cattle.
In 65 C.J.S. Negligence § 104, page 1135> we find the following which is apropos to our consideration of plaintiff’s action :
“Although a person may be negligent in the performance or omission of some duty owed to the person injured, no liability attaches unless it appears that there was a causal connection between such negligence and the injury, and the negligence charged was the proximate or legal cause of the injury, rather than a remote cause, or one merely causing a condition providing an opportunity for other causal agencies to act.”
The following definition of proximate cause- is particularly appropriate for the instant case. We quote this from 65 C.J.S. Negligence § 103, page 1131:
“ ‘Proximate cause,’ it has been said, is one in which is involved the idea of necessity, and one from which the effect must follow, while ‘remote cause,’ although necessary for the existence of the effect, is one the existence of which does not necessarily imply the existence of the effect.”
While it might be argued that plaintiff’s loss was set in motion by defendant’s action, such action on the part of defendant *75 is nothing greater than the remote cause. While it might he argued that defendant would not have suffered the loss of his cattle but for the digging of the canal by the defendant, it could be argued with equal logic and force that had the plaintiff owned no cattle no loss would have been sustained by him from the digging of the canal.
For the foregoing reasons, the judgment of the trial court is reversed and set aside, and there is judgment herein in favor of defendant and against plaintiff rejecting his claim at his costs.
Reversed.