LOTTINGER, Judge.
This proceeding is before us on remand from the Supreme Court of Louisiana for the purpose of determining the amount of crop damages. This case has been before this Court before, and the opinion of this Court on the merits is recorded at 205 So.2d 724, wherein we held that where the highest and best use of the subject property in an expropriation proceeding is found to be for industrial purposes, “All claims for crop loss, replanting costs and loss of revenue, or sugar cane tonnage, for the sugar mill must be rejected.” The Supreme Court of this State granted a writ of review at 251 La. 1055, 208 So.2d 326, and at 253 La. 166, 217 So.2d 188, held that even though the property subject to the expropriation proceeding was found to have its highest and best use for industrial development, the landowner could not be deprived of his damages to his crops as a result of the expropriation. The Supreme Court did not make a determination as to quantum, and has therefore remanded to this Court this proceeding for the determination of quantum. This opinion is therefor limited to the question of quantum only.
In determining the question of quantum as to the destruction of the growing sugar cane crops, the Trial Judge in his written reasons for judgment stated:
“It is the opinion of the Court that the damage suffered by the defendant in the loss of three (3) years of sugarcane is the sum of ONE THOUSAND AND NO/100 ($1,000.00) DOLLARS per acre or EIGHT THOUSAND TEN AND AND NO/100 ($8,010.00) DOLLARS which amount should be paid the defendant for sugarcane damage.
Inasmuch as there is a sugar refinery situated on defendant’s property in which he manufactures his own sugarcane the Court is of the opinion that defendant has suffered a loss of income from the refinery in not having the tonnage of sugarcane lost to refine. Considering testimony of the experts the Court is of the opinion that the amount of profit lost by the defendant in regard to this particular matter would be the sum of FOUR HUNDRED THIRTY-TWO AND 54/100 ($432.54) DOLLARS. This figure was arrived at in figuring tonnage per acre at 30 tons or 240.30 tons for 8.01 per year. 240.30 acres for three years amounts to 720.90 tons. The Court considers a profit of sixty cents (.60) per ton could be made by defendant or the sum of FOUR HUNDRED THIRTY-TWO AND 54/100 ($432.54) DOLLARS loss of profit which amount *528 should also be paid by plaintiff to defendant.”
In checking the testimony of the experts as to the loss for damage to the cane crop, we find the testimony of David E. Black, who was accepted as an expert in the field of horticulture and agronomy, to be the most exacting when it came to a determination of what damage was done to the cane crop. Mr. Black was able to determine what type of sugar cane was growing on each acre to be expropriated, and as such based his estimate of damages accordingly. We do not find that any of the other experts as to the damage done to the sugar cane crop had ever actually physically investigated the crops that were standing at the time in question. In determining the damages done to the cane crops, Mr. Black testified as follows, to-wit:
“A. * * * These estimates, incidently are based on the assumption that construction (here Mr. Black is referring to construction of a pipe line for which this expropriation proceeding was instituted) will begin January 1, and by that time it was assumed that all the present harvestable crop would be removed. They are based then on a total production capacity of 35 tons per acre for plant cane, 30 tons per acre for first-year stubble, and 25 tons per acre for second-year stubble, or a total of 90 tons per acre for the three-year period for that acreage which would normally produce three crops.
“Q. In calculating the cane loss, what price per ton did you use ?
“A. I used $9.00 per ton, for a total crop loss of $3,600.00. (Mr. Black had previously concluded that 400 tons of cane would have been harvested over the life cycle of this crop).
“Q. Are there any other elements of damage in this case that you can see?
“A. Yes sir. I have found through a number of years and several hundred appraisals that it is almost impossible to restore agricultural properties with construction equipment, that is, the bulldozers and the draglines, grader blades and so forth. You can do a reasonably good job of it, but it appears necessary to do some restoration work with agricultural equipment. I was of the opinion that this land restoration cost, which would include fertilization, would cost approximately $50 per acre for the eight acres, or a total restoration cost then of $400.00. There appeared to be an-' other problem, which I could readily anticipate, in that if this crop was not allowed to grow at this proposed site then there would be a weed and grass problem which the operator would be faced with while he was growing and harvesting the remainder of the tracts involved in this crossing. And there would be possible some drainage problems created which, I felt, was an item of damage; so I had listed then damage and grass control — drainage, rather, instead of damage— drainage and grass control at $30 an acre on that eight acres, for a total of $240.00. The total damages — agricultural damages totaled then $4,240.
“Q. Then $4,240 is the total damage that will be done to the crop on account of the construction that is to take place ?
“A. Yes, sir, that would include crop and restoration costs.”
It can be seen from the testimony of Mr. Black, that he has allowed for the harvesting of the sugar cane crop that was standing at the time this suit was originally filed. The Trial Court did not render its judgment until January 27,1967, and we are of the opinion and take judicial notice of the *529 fact that the cane harvesting season would have been completed by this time. Therefore, the defendant would have had every right to harvest any standing crops that were located on the acreage that was the subject of this expropriation proceeding. It is well settled in our jurisprudence, that an individual is obliged to minimize his damages as much as possible. Since the defendant had the opportunity to harvest this cane crop, he cannot be awarded damages for any loss he may have suffered by not harvesting it.
The Trial Judge awarded damages for the loss of the sugar cane crop based on an amount of $1,000.00 per acre for a three year period. We do not feel that the Trial Judge took into consideration the fact that the crop standing at the time of the trial could be harvested, nor did he take into consideration the fact that there were different types of sugar cane standing on the acreage in question. Therefore, the award of the Trial Judge as to the damage to the crops will be reduced to the sum of $4,240.00.
The plaintiff contends that as to the damages allowed the defendant for loss of profit for the sugar mill, such damages are too remote and speculative to be allowed. We do not feel that these damages are any more remote nor no more speculative than the damages to be done to future cane crops, and therefore, we feel that they must be allowed. Mr. David E. Black computed that from the acreage to be used for the right of way, 400 tons of sugar cane would be either destroyed or not produced as a result of the proposed construction. The Trial Judge fixed a profit of 60 cents per ton that would be made by the defendant at the sugar mill.
The Trial Judge concluded that approximately 720 tons of cane would be produced during a three year period. We feel that in light of the testimony of David E. Black, the Trial Judge was excessive in his allocation of tonnage, and therefore reduce this figure to 400 tons. At sixty cents ($.60) per ton, these damages would be $240.00.
Therefore, for the above and foregoing reasons, the portion of the Trial Court’s judgment relative to damages to the crops and loss of profit from the sugar mill will be reduced to the sums of $4,240.00 and $240.00 respectively, making a total of $4,-480.00.
Judgment amended and affirmed.