367 So.2d 417 (1979)
James A. CROWSON, Plaintiff-Appellee,
v.
BAYOU STATE OIL CORPORATION, Defendant-Appellant.
No. 13758.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1979.
*418 Blanchard, Walker, O'Quin & Roberts by Marlin Risinger, Jr., Wm. Paul Lawrence, II, Shreveport, for defendant-appellant.
Hal V. Lyons, Shreveport, for plaintiff-appellee.
Before PRICE, HALL and JONES, JJ.
PRICE, Judge.
James A. Crowson seeks damages from Bayou State Oil Corporation for death and sickness in his herd of cattle alleged to have been caused by leaking oil from defendant's pipeline contaminating the water supply in a pasture leased by plaintiff. Defendant does not dispute that an oil leak occurred and some oil washed into a drainage ditch running through plaintiff's leased pasture for a period of several days. The issues are the sufficiency of plaintiff's proof to substantiate the damages claimed and whether or not plaintiff took reasonable steps to mitigate his damages under the circumstances known to exist.
The trial court, without assigning reasons, rendered judgment for plaintiff awarding the total sum of $22,374.82 for death of cattle and loss of market value of the herd together with cost of auction sales.
Defendant has appealed and plaintiff has answered the appeal asking for an increase in the awards to the amount sued for, $22,054.55 for grown cattle, and $4,686.91 for calves.
We amend and affirm the judgment for the reasons assigned in this opinion.
Plaintiff claims damages for the death of thirty-one cows and twenty calves. He further claims damages for the decrease in market value of ninety-seven cows and sixty-five calves which he contends were disposed of at auction because of their sickness resulting from consumption of oil contaminated water.
Although defendant questions the adequacy of plaintiff's evidence to establish the specific number of cattle maintained by him in the leased pasture, and the proof that the death or sickness of any of plaintiff's cattle was caused by the consumption of the leaking crude oil, we find there is *419 sufficient evidence to justify the trial court's apparent findings in these respects.
We reach this conclusion even though we find that the trial court erred in refusing to permit defendant to offer evidence of plaintiff's conviction of receiving stolen merchandise in connection with its cross-examination of plaintiff. This evidence was offered to test his credibility and should have been permitted for this purpose. See Ashley v. Nissan Motor Corp. in U. S. A., 321 So.2d 868 (La.App. 1st Cir. 1975), writ denied 323 So.2d 478 (La.1975); Fusilier v. Employers Insurance Company of Wausau, 235 So.2d 618 (La.App. 3d Cir. 1970); Middleton v. Consolidated Underwriters, 185 So.2d 307 (La.App. 1st Cir. 1966). As this evidence is in the record in an offer of proof, defendant has not been prejudiced by the trial court's ruling because of the scope of our appellate review of facts as well as law.
The most serious issue on this appeal is whether plaintiff could have prevented all or a part of his damages by a prompt removal of the cattle from the pasture upon discovering oil on the surface of the water standing in the drainage ditch. La.C.C. Art. 2323 provides:
The damage caused is not always estimated at the exact value of the thing destroyed or injured; it may be reduced according to circumstances, if the owner of the thing has exposed it imprudently.
The victim of a tortious act owes a duty to minimize the loss sustained by him if he is reasonably able to do so. Pope v. Spiers, 347 So.2d 1191 (La.App. 1st Cir. 1977); McKinnon v. Caddo Parish Police Jury, 262 So.2d 834 (La.App. 2d Cir. 1972); Humble Pipeline Co. v. Wm. T. Burton Industries, Inc., 221 So.2d 526 (La.App. 1st Cir. 1969). See also Hebert v. United Gas Pipe Line Company, 210 So.2d 71 (La.App. 1st Cir. 1968).
The tract leased by plaintiff, known as the Fuller Place in North Caddo Parish, contains approximately 490 acres consisting of a hill pasture and a bottom land pasture. The two pastures are separated by a cross fence and gate. The drainage ditch into which the leaking oil was found runs into the bottom land pasture near the southwest corner of the tract.
The evidence shows the oil began leaking from defendant's pipeline about a quarter of a mile from this tract on Friday, August 8, or late Saturday, August 9, 1975. A heavy rain washed some of the oil, estimated at approximately fifty barrels, into the drainage ditch extending onto the leased property. The evidence shows this condition was discovered by plaintiff's caretaker on Sunday, August 10, and that plaintiff himself was aware of these circumstances by Monday, August 11, 1975. Plaintiff had just recently moved this herd of cattle into the bottom pasture from the hill pasture for better grazing. Plaintiff acknowledged in his testimony that he was aware of the harm that could be caused to cattle from drinking water contaminated by crude oil, and that cattle will drink such water if exposed to the hazard.
Defendant learned of the leak and resulting flow of oil into plaintiff's pasture on either Monday, August 11, or Tuesday, August 12 and began clean up operations on Wednesday, August 13. This operation was satisfactorily completed in approximately six days. No effort was made by plaintiff to remove his cattle from this pasture during this period.
Plaintiff testified his cattle showed no signs of illness until approximately six or seven days after he discovered the oil on the water in the drainage ditch and did not become seriously ill until twelve to fifteen days after this discovery.
The testimony of the veterinarians who testified in this matter shows that if cattle ingest a large quantity of crude oil in a short period of time they will show symptoms of illness within a few hours. This same testimony shows that the consumption of small amounts of crude oil each day over a period of several days can have a cumulative effect and will not cause cattle to become sick until a sufficient amount accumulates in the digestive tract. This is not true in the event the oil contains a large quantity *420 of a highly toxic chemical additive which in itself can cause immediate illness. The evidence shows that although the crude oil contained a chemical additive known as Treatolite WF-63, the concentration was minimal, and this product is not toxic to the vital organs of cattle.
We conclude that the symptoms of illness in the cattle as described by plaintiff when weighed in relation to the other evidence shows the illness of the cattle was caused by the cumulative effect of daily ingestion of small quantities of oil over a period of seven to fifteen days. Therefore, had the cattle been removed within a reasonable time from exposure to the oil the damage to the herd would have been minimal if any.
Although plaintiff contends he asked for help from defendant's employees in removing the herd and was refused, the evidence does not support this contention. Plaintiff was an experienced farmer and cattleman, grazing over 1600 acres in various locations, and had several employees, including his two sons. It is unreasonable to believe that he could not have moved the cattle back into the adjoining hill pasture at a reasonable expense and minimized the potential damage to the herd from the continued drinking of the oil contaminated water.
Under these circumstances, we find the damages claimed by plaintiff should be mitigated to one-half of the amount awarded by the trial judge.
The judgment appealed is amended to reduce the total sum awarded to plaintiff to the sum of $11,187.41, and in all other respects the judgment is affirmed. Costs of this appeal are assessed to plaintiff.