**SHAW et ux. v. NEW ORLEANS PUBLIC SERVICE, Inc.**

No. 17050.

Court of Appeal of Louisiana. Orleans.

April 24, 1939.

Rehearing Denied May 22, 1939.

Adam H. Harper, of New Orleans, for appellants.

Alvin R. Christovich, of New Orleans, for appellee.

WESTERFIELD, Judge.

Bernard W. Shaw and Carrie Jefferson Shaw, his wife, brought this suit against the New Orleans Public Service, Inc., for damages and expenses due to alleged physical injuries sustained by Carrie Shaw while she was attempting to alight from a passenger bus operated by the defendant. Carrie Shaw claims $2500 for physical injuries and her husband, as head and master of the community, $139.49 for medical and other expenses. The defendant answered denying liability.

The case was tried by a jury which rendered a verdict in favor of the defendant, and from a judgment based on that verdict plaintiff has appealed.

Plaintiff, Carrie Shaw, testified that about 9:30 A. M., on the 10th day of January, 1937, she boarded a passenger bus, operated by the defendant company, at the intersection of Melpomene and S. Broad Streets; that she paid her fare and rode in the bus until it reached the intersection of Gravier and S. Broad Streets when, in attempting to alight through the automatic doors which were on the right side of the bus near the center, the doors suddenly and violently closed and jammed her between them; that the doors opened and closed several times and finally remained opened long enough for her to release herself causing her to fall to the

ground, with the result that she received a severe sprain of the right shoulder and injury to the right side of her chest and right arm, accompanied by severe shock; that she was confined to her bed about four weeks under the care of a physician and that at the time of the filing of the suit, four months later (May 10th, 1937) she was still receiving medical treatment and was still suffering. Her counsel claims that the accident was caused by the failure of the operator of the bus to allow sufficient time for her to alight from the car before closing the door and also because the mechanism controlling the doors was defective.

Plaintiff's testimony is unsupported by any other witness. She says she called the attention of the bus driver by screaming and demanding that he extricate her from the doors; and that there were no other passengers in the bus at the time, though just as she was leaving the scene of the accident, a man boarded the bus. She gave the number of the bus which she claims to have been involved in the accident as 1158, but she was mistaken, because while the defendant operates a bus bearing that number it is not used on the Gentilly-Broad Line, on which, she testified, the accident occurred. The numbers of the busses that were operated on that line on that day, January 10th, 1937, between the hours of 4:20 a. m. and 1:00 p. m. (the accident is said to have happened about 9:35 a. m.), according to the testimony of Mr. Van Mannen, the station master for defendant in charge of the Canal Street Barn where the busses of defendant are kept, were 1183, 1307, 1184, 1182, 1175, 1174 and 1312.

The evidence of each of the drivers of these busses, some of which was given viva voce and some by admission of counsel as to what they would testify, was to the effect that no accident happened on their bus on that day at 9:35 a. m. or at any other time, at the intersection of Gravier and S. Broad Streets.

The doors of the busses used by the defendant on its Gentilly-Broad Line are automatic and when a passenger, desiring to alight, approaches the exit, he or she must step on what is called a "treadle plate" which causes the folding doors to open. On the step of the bus is another treadle plate which as long as the passenger's weight is on the step causes the doors to remain open. According to the testimony of Anthony LeBarre, the foreman of defendant's bus garage for ten years, the accident could not have happened in the manner in which plaintiff claims it did, for each of the doors are equipped with strips of soft rubber two and a half inches wide on the side nearest the passenger's body. Inside of these rubber strips there are electric wires which, when contact is made with an object, such for example as the shoulder, arms or hand of a passenger, the doors immediately open through electrical control and as long as the obstacle remains they will continue to open and close in what is known as a "fanning operation". LeBarre also testified that he had made many experiments and had seen people deliberately put their heads, arms and shoulders in the doors allowing the doors to open and close over and over again without any injury or discomfiture. The testimony of LeBarre is objected to on the ground that he was not proven to be an expert. We believe this objection to have been properly overruled. LeBarre testified that he had ten years experience as a mechanic in charge of defendant's busses, and while it does not appear that he had any technical training as an engineer he was sufficiently acquainted with the operation of the doors of the bus to enable him to testify concerning the effects produced by the electrical and mechanical equipment with which they are operated, and that is all that he undertook to do.

Objection was also made to experiments which were conducted in the presence of the jury by the defendant, with a bus claimed to be similar to those used on the Gentilly-Broad Line, upon the ground that there was no evidence to show that the bus was in the same condition as the bus "on which Carrie Shaw was injured". This objection was also overruled and we think properly since there was no way by which the bus on which Carrie Shaw was injured could be identified—not even Carrie Shaw herself could do this. Moreover, the position of defendant was and is that the accident did not happen at all. It was proper, we believe, to demonstrate to the jury the busses operated on the line on which Carrie Shaw claims to have been injured, by exhibiting one typical of the rest.

Finally, counsel contends that the evidence of defendant concerning the operation of the folding doors is not conclusive as to the impossibility of injury in

the manner in which Carrie Shaw claims to have been hurt, because the mechanism might have been out of order. This is true enough, but in the absence of proof that the mechanism was out of order, evidence that, under normal conditions, it was innocuous was relevant and of probative value, particularly when' coupled with the testimony of defendant's employees that regular and thorough inspections were made of its busses from time to time.

Our conclusion is that the plaintiffs have failed to make out a case. Under certain conditions the testimony of plaintiff alone would be sufficient, but here plaintiff's evidence has been so weakened by its deficiency in important details as well as by the circumstantial evidence of the defendant, as to destroy its probative value. Plaintiff carries the burden of proving with legal certainty the facts upon which she relies. This she has failed to do.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.