185 So.2d 307 (1966)
William E. MIDDLETON
v.
CONSOLIDATED UNDERWRITERS.
No. 6604.
Court of Appeal of Louisiana, First Circuit.
April 4, 1966.
Gordon M. White, of White & May, Baton Rouge, for appellant.
Carlos G. Spaht, of Kantrow, Spaht & Kleinpeter, Baton Rouge, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
LOTTINGER, Judge.
On or about October 19, 1963, the appellant, William Middleton, was employed as a *308 sheet metal worker for McCarty-Branton, Inc., working on a job at the Dow Chemical Plant of Plaquemine, Louisiana. His duties involved cutting out metal pieces which were then used to cover tanks, and this cutting operation involved the use of a table and cutting the metal from a pattern. Mr. Middleton generally used a marking pencil to mark the outline of the pattern on the metal which he was cutting, but on this particular day he ran out of marking pencil, went across a small street to a paint shack owned by Hartman Walsh Corporation, the assured of Consolidated Underwriters, who was a painting contractor working on the same job at the Dow Chemical Plant, allegedly to borrow some paint from the paint shack in order to use in place of his marking pencil.
Middleton went into the paint shack, talked with the superintendent of the paint contractor who was in the shack for a few minutes, and then left the paint shack, allegedly to return to his own place of employment. The paint shack was a small building situated on skids and was between 12 and 15 inches above the ground. As Middleton stepped out of the shack, he stepped on a hat made of either plastic or metal, commonly described as a hard hat, allegedly belonging to one of the painters who were working on the job, and who employed this paint shack as a place in which to eat their lunch. As he stepped or tripped over the hat, he fell and allegedly sustained a fracture of his ankle.
On March 23, 1964, Mr. Middleton instituted the instant suit, naming as defendant Consolidated Underwriters, the public liability insurer of Hartman Walsh Corporation. He alleged in his suit the date of the accident, his employment at the time of the accident, his place of employment, the fact that he had gone into the paint shack and that in stepping down from the shack back to the ground, he had stepped on a metal hat in the doorway which caused him to trip and fall, thus fracturing his left foot. He alleged that the hat which he stepped on belonged to a painter who at that time was working for Hartman Walsh Corporation. He further alleged that the leaving of the hat just outside of the doorway of the paint shack constituted negligence of an employee of Hartman Walsh Corporation and that since the fall and injury he had been unable to hold down his job as a sheet metal worker. He prayed for damages in the amount of $156,720.00, for pain and suffering, medical expenses, loss of wages, and future medical expenses.
The defendant filed an answer which was in the nature of a general denial and which further specified that Middleton had entered the building of Hartman Walsh Corporation without their permission and without the permission of any of its agents or employees, and was therefore a trespasser at the time of the incident in question. Alternatively the defendant pleaded contributory negligence on the part of the plaintiff in failing to see the hat which they alleged was clearly in view.
The plaintiff prayed for and obtained a trial by jury which was held on December 18, 1964, and resulted in a verdict in favor of the defendant. Thereafter, on December 28, 1964, a judgment conforming to the verdict was signed by the District Judge rejecting the demands of the plaintiff at his costs. It is from this judgment that the plaintiff appellant has perfected this appeal.
The appellant assigns two specifications of error. The first is that the Trial Court erred in ordering the plaintiff to describe the nature of a crime that he had committed after the plaintiff had admitted that he had in fact previously been convicted of a crime.
Prior to the time of the trial, the defendant took the deposition of the plaintiff, and in the course of the taking of this deposition counsel for defendant inquired of the plaintiff as to whether or not he had ever been convicted of a crime, and the plaintiff replied in the affirmative. Counsel for defendant then asked plaintiff to describe the nature of the crime of which he had been convicted, and the plaintiff, on instructions *309 from his counsel, refused to answer the question. Thereafter, by rule, the propriety of having the plaintiff answer this particular question was heard by the Trial Judge, and he, at that time, ruled that the plaintiff was not required to answer that particular question. Thereafter, during the course of the trial, and when the plaintiff was under cross-examination, counsel for defendant again asked the question as to whether or not plaintiff had ever been convicted of a crime, to which he again replied in the affirmative. Counsel then asked plaintiff to describe the nature of the crime, to which question counsel for plaintiff objected. There seems to be some confusion as to whether or not counsel for plaintiff did finally acquiesce and agree to letting plaintiff answer this particular question, but for purposes of this appeal, we will assume that he did not abandon his objection. The Trial Judge overruled the objection and ordered the plaintiff to answer the question, and he did so, describing a felony which had been committed some twenty years previously.
Counsel for plaintiff argues that the Trial Judge's ruling that Mr. Middleton was required to answer the question as to the nature of the crime which he admitted having committed destroyed Mr. Middleton's "competency as a witness" which counsel says was highly important in this particular lawsuit. He further argues that this "competency" crumbled when the Court compelled him to answer the question. In his brief, counsel for plaintiff summarizes Wigmore's Comments in Chapter 22 of his work on evidence relative to the testimonial qualifications of persons who have committed crimes. Wigmore points out that in the early common law in England it was well recognized that some criminals who were wholly capable of correct observation and of accurate recollections were thought to be so lacking in a sense of moral responsibility so as to be unable to tell their story with entire indifference as to its consequences and with the correct facts observed and recollected by them. Wigmore traces that early concept through the years until finally the doctrine was entirely repudiated.
McCormick, in his Handbook of the Law of Evidence (1954), at page 89 states:
"At common law the conviction of a person for treason or any felony, or for a misdemeanor involving dishonesty (Crimen Falsi) or the obstruction of justice, rendered the convicted person altogether incompetent as a witness. These were said to be `infamous crimes'. By statutes which are practically universal in the common law world, this primitive absolutism has been abandoned and the disqualification for conviction of a crime has been abrogated, and by specific provisions or by decision has been reduced to a mere ground of impeachment of credibility."
We believe that the admission by the Trial Judge of evidence relative to the nature of a prior crime certainly does not destroy the competency of the plaintiff as a witness, but rather affects his credibility as a witness. In every case involving testimonial evidence, the trier of fact, in this case, the jury, is faced with the question of whether to believe the testimony of any given witness, or differently phrased, is faced with the task of assessing the credibility of the witness. One of the material factors bearing on the issue of credibility is the character of the witness for truthfulness, and one of the main functions of the cross-examination is to afford an opportunity to elicit answers which will impeach the truthfulness or credibility of the opponent's witnesses. We therefore believe that prior conviction of a crime and the nature of the crime may be inquired into for impeachment purposes on cross-examination. At 98 C.J.S. Witnesses § 515i (3) c, page 432 et seq. we find the following:
"Nevertheless, and although not permitted in some jurisdictions, it is usually held that the name or nature of the crime involved, and sometimes even the place thereof, in the extent of the punishment imposed may be inquired into."
*310 In addition, we observe that the crime in question here was one involving dishonesty and that the testimony as to the nature of the crime was clearly relevant to the character of the plaintiff and was a matter of proper consideration to be used by the jury in giving the proper weight to the plaintiff's testimony. In substance, we feel that cross-examination of a witness which seeks to elicit from that witness facts as to the commission of and details of any crime committed by that witness is proper cross-examination in that it is as relevant a consideration to be used in evaluating the credibility of a witness as are many other factors.
Appellant's second assignment of error is that the Trial Judge erred in instructing the jury on the legal definition of and the duty owed to a trespasser. In this case, Middleton was allegedly injured while on premises occupied by the painting contractor, the defendant's assured. As he was admittedly not an employee of the painting contractor, his presence on the premises necessarily must have been in one of three capacities, either as an invitee, a licensee, or a trespasser. The duty of care owed by the occupier of premises to each of these three classes of persons varies greatly. See Alexander v. General Accident Fire and L. Assurance Corporation, La.App., 98 So.2d 730 (1957), Potter v. Board of Commissioners of the Port of New Orleans, La.App., 148 So.2d 439 (1963), and Mercer v. Tremont & G. Ry., La.App., 19 So.2d 270 (1944). We think that the action of the Trial Judge in instructing the jury on the definition of and the duty owed to each of these three classes of persons was eminently correct. The jury, as the trier of the facts and the law, had the duty and obligation to determine, in the course of its deliberations, the status enjoyed by the plaintiff at the time that he was on the premises occupied by the defendant's insured. In addition, we note that instruction number three requested by the plaintiff contains a definition of a trespasser. Although this particular instruction was refused by the Trial Judge, we nevertheless note that plaintiff's counsel himself requested that the Court instruct the jury with reference to the definition of a trespasser.
Accordingly, the judgment of the Trial Court is affirmed at appellant's costs.
Judgment affirmed.