268 So.2d 56 (1972)
Mrs. Patricia Corvers WILLIAMS, Individually and for and on Behalf of Her Minor Children, Mary Elizabeth Williams and Daniel LeRoy Williams, III,
v.
John E. GARNER et al.
No. 8959.
Court of Appeal of Louisiana, First Circuit.
October 2, 1972.
Rehearing Denied November 13, 1972.
Joseph F. Keogh, Davis Gueymard, and Keogh, Krousel & Ervin, Baton Rouge, for appellant.
James D. Thomas, II, Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for appellees.
Before LANDRY, SARTAIN and TUCKER, JJ.
LANDRY, Judge.
Defendant, John E. Garner and his wife, Lillian S. Garner, appeal a judgment in favor of plaintiff, Patricia Corvers Williams and her minor children, Mary Elizabeth Williams and Daniel LeRoy Williams, III, for damages for the wrongful death of Daniel L. Williams, Jr. (husband and father), who was killed in an intersectional collision between a motorcycle being operated by decedent and the family automobile being driven by Mrs. Garner. Plaintiff has answered the appeal praying for an increase in the amounts of their respective awards. We affirm.
The issues to be resolved are: (1) The alleged negligence of Mrs. Garner; (2) the reputed contributory negligence of decedent who was proceeding on the favored roadway; (3) whether Mrs. Garner was on a community mission rendering her husband liable for her tort; (4) whether the trial court properly admitted evidence of defendants' limited ability to respond in damages notwithstanding a failure to specifically so plead, and (5) the adequacy of the awards rendered in plaintiffs' favor.
Defendants' insurer, Allstate Insurance Company, was likewise made defendant herein. After judgment below, Allstate also appealed, but later paid plaintiffs special damages, and the limits of Allstate's liability for personal injuries, namely the sum of $5,000.00. Allstate has voluntarily dismissed its own appeal, but has continued its defense of its insured.
Subject accident occurred at approximately 11:00 P.M., October 17, 1969. Decedent was driving his virtually new motorcycle northerly along Louisiana Highway 1, in the vicinity of the Village of Addis, West Baton Rouge Parish, a major four-lane, north-south highway connecting Port Allen, West Baton Rouge Parish, and Plaquemine, Iberville Parish. The four lanes of Highway 1 are separated by a wide, grassy neutral ground. A blacktopped service road parallels Highway 1 on its eastern side. There is no service road to the west. The service road on the east side of Highway 1 is separated from the two northbound lanes of Highway 1 by a rather wide neutral ground area. The northbound lanes of the highway, and the service road on the east side are connected by a paved strip which traverses the intervening neutral ground. Old Highway 1 roughly parallels Highway 1 some distance to the west and traverses a road known as Eddie Road which courses in an easterly westerly direction and intersects Highway 1. Mrs. Garner was proceeding north on Old Highway 1, and intended to cross the main highway via intersecting Eddie Road. When she reached Eddie Road, she turned to her right, and proceeded easterly toward Highway 1. A stop sign at the southwest corner of Eddie Road and Highway 1 required eastbound motorists on Eddie Road *59 to stop before entering the intersection. The speed limit for motorists traveling Highway 1 is 70 miles per hour.
The record discloses that decedent's motorcycle struck the Garner vehicle immediately forward of its right rear wheel. The impact occurred on the paved area connecting the northbound lanes of Highway 1 with the service road to its east, at a point approximately two to three feet east of the eastern edge of the outside or easternmost lane of the two northbound lanes of travel.
Mrs. Garner conceded her failure to stop for the stop sign before traversing the southbound lanes of the favored highway. She stated she crossed the southbound lanes at a slow rate of speed, and proceeded to the neutral ground separating the north and southbound lanes of travel. While in the neutral ground area, she looked to her right (south), and saw only the lights of an approaching northbound vehicle which she deemed a safe distance away. She then proceeded to cross the northbound lanes. She stated she may have looked again to her right while crossing the northbound lanes, but that if she did, she saw no approaching vehicle. She then proceeded across the northbound lanes, and applied her brakes preparatory to checking for northbound traffic in anticipation of turning left to proceed northerly on the service road. While in this position, with no portion of her vehicle extending into the northbound lane of Highway 1, she looked to her right, observed decedent's motorcycle about five feet away, and immediately the impact occurred. Mrs. Garner also stated she heard no noise of brakes being applied before the collision. She further stated that after the collision, her vehicle rolled a few feet forward and came to rest.
The accident was investigated by Trooper John W. Smith of the State Police. He noted the stop sign at the intersection and confirmed that the speed limit for vehicles traveling upon Highway 1 was 70 miles per hour. Trooper Smith found skid marks left by decedent's motorcycle which, by pacing, were determined to be 114 feet in length. He noted that the skid marks began just off the traveled portion of Highway 1 on the paved shoulder thereof and continued to the point of impact. Based on the skid marks and other physical evidence, such as debris, Trooper Smith fixed the point of impact in the center of the paved strip joining the northbound lanes of Highway 1 and the service road at a spot two or three feet east of the eastern edge of the outside northbound lane of Highway 1. The Trooper also found that the Garner vehicle came to rest between Highway 1 and the service road approximately 20 feet east of the point of impact.
By deposition, Max A. Blanchard testified that shortly before the accident, he had been proceeding northerly upon Highway 1 at a speed of approximately 45 to 50 miles per hour. He noted a single headlight overtaking him from the rear, and observed decedent pass on his motorcycle at a speed of approximately 60 miles per hour in the inside or northbound passing lane. Blanchard was impressed by the apparently new condition of decedent's vehicle, and the orderly manner in which decedent was proceeding. Within three to five minutes thereafter Blanchard arrived at the scene of the accident.
Appellants complain of the trial court's holding Mrs. Garner guilty of negligence, and exonerating decedent from the charge of contributory negligence. Appellants lay great stress on the fact that the impact occurred off the traveled portion of the northbound lanes of Highway 1. Appellants contend Mrs. Garner proceeded cautiously across the intersection, that she exercised a proper lookout, and had every reason to believe it was safe for her to cross the favored thoroughfare. It is appellants' position that decedent was totally at fault in failing to timely see the crossing automobile, and either stopping or directing his vehicle into the inside lane to pass safely behind Mrs. Garner. Appellants' position may be analyzed by stating that Mrs. Garner preempted the intersection, *60 and it was negligence per se on the part of decedent in either not stopping or electing to veer to the right (the direction in which the crossing vehicle was proceeding) instead of going to his left behind the Garner automobile. In so contending, appellants rely upon Schexnaildre v. Bledsoe, La.App., 194 So. 45; Bethancourt v. Bayhi, La.App., 141 So.111; Smyth v. Hill Stores, Inc., 8 La.App. 246; Laughlin v. Sullivan, 14 La.App. 491, 131 So. 687, all of which involve intersectional collisions on a multi-laned roadway. We have examined the cited authorities and find none are factually apposite in that each involved an intersectional collision occurring within the City of New Orleans.
We are here dealing with a multi-laned, open highway on which the maximum speed limit of 70 miles per hour was in force. The matter before us is more nearly analogous with Jenkins v. Brignac, La. App., 146 So.2d 649, which concerned an intersectional collision on a multi-laned highway on which plaintiff was proceeding at a lawful speed of 55 to 60 miles per hour.
It is basic law that a motorist claiming preemption of an intersection while crossing a favored roadway must show his entry at a time when he had reasonable opportunity to complete the crossing without endangering or impeding the passage of a vehicle on the superior roadway. Jenkins v. Brignac, above, and cases cited therein.
The record dictates the inescapable conclusion that Mrs. Garner did not see the approaching motorcycle before starting to cross decedent's path of travel. It is equally clear there was no obstruction to Mrs. Garner's view to the south as she prepared to cross the northbound lanes of travel. Mrs. Garner was negligent in not seeing what she should have seen, and entering the intersection when her entry posed an imminent danger to a motorist proceeding lawfully upon the favored highway. We also find that her negligence was a proximate cause of the accident.
The record justifies the conclusion that decedent was proceeding in the outside northbound lane immediately before reaching the intersection. We also find that decedent was proceeding within the lawful speed of 70 miles per hour, since nothing in the record indicates a contrary conclusion, and the burden of proof in this respect rests upon appellants. Kern v. Knight, 13 La.App. 194, 127 So. 133.
Decedent, traveling on the favored thoroughfare, had the right to assume that Mrs. Garner would defer to his superior privilege to proceed. Jenkins v. Brignac, above. We find as a fact that decedent did in fact see Mrs. Garner's automobile, and took evasive action to avoid an accident when he realized that Mrs. Garner would not respect his right of way. We also find that decedent was faced with a sudden emergency not of his own making, and exercised the degree of care demanded of him by law, namely, such care as is expected and required of a reasonably prudent individual under the same or similar circumstances. Ashford v. Richards, La.App., 228 So.2d 530. To avoid a charge of negligence or contributory negligence, a motorist, faced with an emergency not of his own making, is not required to opt a solution guaranteed to avoid an accident. In such circumstances, a driver is required only to react with ordinary reasonable care and prudence under the existing circumstances. Smith v. Marquette Casualty Company, 247 La. 1054, 176 So.2d 133. We find that decedent's reaction to the emergency created by Mrs. Garner's negligence meets the test of ordinary, reasonable prudence under the circumstances. We find that decedent was free of all negligence whatsoever.
Defendants' contention that Mrs. Garner was not on a community mission is without merit. The record discloses that Mrs. Garner left home on the afternoon of the accident, *61 in the family automobile, with her husband's permission. Accompanied by her small child and her sister, she had gone on a shopping mission. Mrs. Garner made no purchases. She had been instructed by Mr. Garner to return not later than 8:00 P.M. so that the family could prepare to leave on an out of town trip early the following morning. Mrs. Garner's sister lived with the mother of the two women. On returning her sister to the mother's home, Mrs. Garner found that her brother had returned from overseas duty and was at her mother's home. This joyous occasion prompted Mrs. Garner to remain until shortly before 11:00 P.M. While returning to her own home, Mrs. Garner was involved in the accident.
To render a husband liable for damages occasioned by his wife's negligent operation of a motor vehicle, the wife must have been using the vehicle with the husband's consent, and must also have been engaged upon a community mission. Brantley v. Clarkson, 217 La. 425, 46 So.2d 614. Defendant husband maintains Mrs. Garner did not have his permission since she was instructed to return by 8:00 P.M., and did not return until 11:00 P.M. He also contends that Mrs. Garner was on a personal errand since she was returning from a social visit with relatives. In this connection, the husband's reliance upon Meibaum v. Campisi, La.App., 16 So.2d 257, and Lambert v. McKinster, La.App., 44 So.2d 513, is not well founded.
It is now well settled that a wife using a community vehicle for her own recreation is engaged upon a community mission, inasmuch as the community owes her the means of recreation and pleasure as much as it is obliged to provide her food, clothing and shelter. Brantley v. Clarkson, above. In Brantley, above, a wife returning from a visit with an acquaintance from whom she borrowed a knitting needle with which to knit herself a sweater, was found to be engaged in a community mission. More recently, in Vail v. Spampinato, 238 La. 259, 115 So.2d 343, a wife was involved in an accident while driving a friend to a meeting, the friend having agreed to pay for the transportation provided. In Vail, above, the Supreme Court held that the wife was engaged on a community mission because she was making the trip partially for her own pleasure, notwithstanding she was transporting a paying passenger.
The trial court correctly found Mrs. Garner was engaged in a community mission. She was using the vehicle with her husband's permission. She was using the car for her own recreation and pleasure, namely, returning from a visit with relatives. Mr. Garner is liable for his wife's negligence under the circumstances.
Plaintiffs urge that the trial court erred in permitting defendant Garner to introduce evidence in mitigation of damages predicated on his inability to pay, notwithstanding plaintiff's timely objection on the ground that defendant failed to specially plead for such relief. It is well settled that, in awarding damages, a trial court may consider the ability of a defendant to respond in judgment. Winzer v. Lewis, La.App., 251 So.2d 650; Smith v. Girley, La.App., 242 So.2d 32; Hilburn v. Johnson, La.App., 240 So.2d 767; Lambert v. Foy, La.App., 224 So.2d 11. The foregoing rule is based on the equitable principle that courts will not grant vain and useless relief or render a judgment incapable of execution. We are aware of no requirement that inability to pay be specially pleaded as a defense.
Inability to pay is not an affirmative defense specifically required to be plead in answer pursuant to LSA-C.C.P. art. 1005. It is not, in fact, an affirmative defense at all since it does not tend to defeat a plaintiff's claim. It merely seeks to limit recovery because of defendant's incapacity to pay in full the amount to which plaintiff may be entitled. The clear tenor of the cited authorities is to the effect that inability to pay need not necessarily be affirmatively *62 alleged. The rule is in keeping with LSA-C.C. art. 1934(3), which states that much discretion is allowed a trial court in the assessment of damages in cases involving offenses and quasi offenses. We find no error on the part of the trial court in permitting defendant to establish inability to pay, notwithstanding failure to specifically so plead.
We observe that in a case of this nature, should plaintiff plead surprise where defendant attempts to prove mitigation of damages without having so plead, the proper remedy for plaintiff is to request a continuance to afford opportunity to investigate. The refusal of the trial court to grant such a continuance would then be subject to appellate review.
The record discloses that defendant husband is regularly employed by Dow Chemical Company at a salary of $815.00 per month. Mrs. Garner is employed as a church secretary and earns $240.00 monthly. Mr. Garner has no property, no savings account, and owns no interest in any succession. He owns no stock or bonds except two shares of Dow Chemical Company stock valued at approximately $100.00 each.
The trial court rendered judgment in favor of plaintiff widow in the sum of $25,000.00 plus special damages totaling $1,673.31, and in favor of each surviving child in the sum of $5,000.00, together with special damages in the amount of $374.16, or a total of $5,374.16 for each minor. Considering defendants are personally cast in a sum aggregating approximately $37,000.00, and also considering their ability to pay, we find no abuse of the trial court's discretion in assessing damages in this instance.
The judgment of the trial court is affirmed; all costs of these proceedings to be paid by defendants, John E. Garner, Lillian S. Garner, and Allstate Insurance Company.
Affirmed.