321 So.2d 868 (1975)
Rufus W. ASHLEY
v.
NISSAN MOTOR CORP. IN U.S.A. et al.
No. 10235.
Court of Appeal of Louisiana, First Circuit.
September 2, 1975.
Rehearing Denied November 24, 1975.
Writ Refused December 19, 1975.
*870 Ralph Brewer, Baton Rouge, for appellant.
J. Walter Ward, Jr., New Orleans, for Nissan Motor Corp., Tokio Marine, Nissan Fire & Marine Ins. and Yasuda Fire & Marine.
Boris F. Navratil, Baton Rouge, for defendants-appellees Diamond Motors and Continental Ins.
Neil H. Mixon, Jr., Baton Rouge, for defendant-appellee Diamond Motors.
Richard B. Nevils, Baton Rouge, for defendants-appellees Michael Brown and Early American Ins. Co.
Before LANDRY, BLANCHE and YELVERTON, JJ.
YELVERTON, Judge.
Plaintiff, Rufus Ashley, was seriously injured as a result of a single car accident which occurred on June 11, 1972, on a rural highway in East Feliciana Parish, Louisiana. Plaintiff was a passenger in a 1972 Datsun automobile owned and driven by his friend, Michael W. Brown, one of the defendants in the present action. Also named defendants in this action were Nissan Motor Corporation in U.S.A., herein referred to as "Nissan", and its liability insurers, Tokio Marine & Fire Insurance Co., Ltd., Nissan Fire & Marine Insurance Co., Ltd., and Yasuda Fire & Marine Insurance Co., Ltd.; Diamond Motors, Inc., herein referred to as "Diamond", and its liability insurer, Continental Insurance Company; and Early American Insurance Company, the liability insurer of Michael W. Brown.
The accident happened at approximately 11:00 o'clock p.m. on a two-laned blacktopped highway which was wet from rain. The defendant, Michael W. Brown, was in the process of giving the plaintiff a ride to Baton Rouge from a party which they both had attended. For reasons which were disputed in the lawsuit, Brown lost control of the automobile which left the road and turned over several times before coming to rest. Ashley was thrown from the car and sustained a broken back which left him paralyzed from his waist down.
Brown had bought the Datsun new from Diamond, an authorized Datsun dealer located in Baton Rouge, Louisiana, on April 12, 1972, just two months prior to the accident. Ashley's suit against Brown *871 was based upon his negligent driving. His suit against Diamond, the seller, and Nissan, the manufacturer, was based upon the allegation that a defect in the automobile caused the accident. In particular, he claimed that the vehicle was defective in that the right rear wheel cylinder was frozen or seized and that the brakes failed in the accident as a result of that defect.
The case was tried to a jury. After the trial the jury apparently decided that the accident was due entirely to the negligence of Brown and not to any defect which existed in the automobile for which either of the other two defendants was responsible. Consequently, judgment was rendered only against Brown, and plaintiff's suit against Diamond and Nissan and their respective insurers was dismissed.
On this appeal plaintiff seeks to overturn the dismissal of his suit as against Diamond and Nissan. Among the assignment of errors are numerous allegations of error committed by the trial judge in the conduct of the trial. We affirm the verdict of the jury and find no error by the trial judge. We will now discuss each issue raised by the assignment of errors.
I. Evidence of Prior Convictions to Test Credibility
Appellant first complains that it was error to refuse to grant his "motion for a protective order" filed early in the trial designed to prevent the defendants from making inquiry into any prior convictions of plaintiff or any of his witnesses, other than convictions involving "dishonesty". The trial judge applied the rule that impeachment by conviction for previous crimes is permissible as affecting the credibility of a witness. He refused to limit the application of the rule to felony or misdemeanors involving dishonesty. The trial judge was correct in so ruling.
In Middleton v. Consolidated Underwriters, 185 So.2d 307 (1st Cir., 1966) this court when confronted with a similar situation in a personal injury suit said:
"In every case involving testimonial evidence, the trier of fact, in this case, the jury, is faced with the question whether to believe the testimony of any given witness, or differently phrased, is faced with the task of assessing the credibility of the witness. One of the material factors bearing on the issue of credibility is the character of the witness for truthfulness, and one of the main functions of the cross-examination is to afford an opportunity to elicit answers which will impeach the truthfulness or credibility of the opponent's witnesses. We therefore believe that prior conviction of a crime and the nature of the crime may be inquired into for impeachment purposes on cross-examination."
The Third Circuit in the case of Fusilier v. Employer's Insurance Company of Wausau, 235 So.2d 618 (La.App., 3rd Cir., 1970), citing Middleton, allowed the impeachment of a witness in a civil case by showing his convictions for several offenses including reckless driving.
We have found no authority in Louisiana indicating the cross-examiner's right to inquire into prior convictions is limited to convictions involving dishonesty. The following observation is made by Professor George W. Pugh in his book, Louisiana Evidence Law, at Page 116:
"But, according to recent Louisiana Supreme Court decisions, any conviction including misdemeanors, regardless of the remoteness in time of the conviction, and whether the conviction directly bears upon the witness' veracity, may be the subject of this inquiry."
II. Denial of Plaintiff's Motion for Production The next complaint of error addresses itself to the refusal of the trial judge to grant a motion to produce documents filed four days prior to trial. The *872 documents sought were distribution agreements, franchise agreements, owner's manuals and owner's service manuals respecting the parties to the suit and the Datsun automobile involved. Although the trial judge refused to grant a motion to produce filed only four days prior to trial, he did grant a Subpoena duces tecum on the morning of trial returnable two days thereafter. The responses to the Subpoena duces tecum apparently satisfied plaintiff since nearly all of the requested documentation was provided and no objection was made to the adequacy of the response at the time.
The trial judge did not abuse his discretion in refusing to grant the motion to produce. LSA-C.C.P. art. 1492, which provides for production of documents, is located in that portion of the Code dealing with "Depositions and Discovery" (Book 2, Chapter 3) and accordingly deals with Pre-trial discovery of evidence. Article 1354 of the Code sets forth the means ("subpoena duces tecum") whereby documents may be produced during trial. The trial judge was entirely correct in his ruling. Furthermore, plaintiff was not prejudiced by the ruling.
III. Various "Procedural" Errors
A number of procedural errors were alleged to have been committed by the trial judge in the conduct of the trial itself. We find no abuse of discretion in any of the rulings which we will now briefly discuss.
ITEM 1. Evidence taken out of turn.
The trial judge did not err in permitting the interruption of the presentation of plaintiff's case by permitting certain evidence to be produced out of turn by the defendants. What was involved was the introduction of a hospital record and a police report which required simply that the custodians of those records identify by brief testimony that these were the subpoenaed documents. This was permitted in order for these custodians to make production of the subpoenaed documents and give their brief testimony and then return to their places of employment. This is usual and customary and does not constitute an interruption of such proportions as to amount to an abuse of the trial judge's discretion.
ITEM 2. Unapproved release of plaintiff's witnesses.
Two State Troopers called as witnesses for the plaintiff unaccountably left early on the first day of trial, and for that reason, the proceedings had to be recessed at 4:00 o'clock in the afternoon. Nothing in the record shows who released the witnesses. It was apparently a misunderstanding. Nothing in the record suggests any error on the part of the trial judge in handling the situation that required an early recess. His explanation to the jury more than amply protected the plaintiff from any conceivable adverse effect of stopping early on the first day. He said: "Nobody is to blame for this afternoon, and nobody is to be condemned for our quitting early today, and I am sure you don't mind that."
ITEM 3. Motion pictures of plaintiff
The trial court refused to allow a showing to the jury of color motion pictures of the plaintiff. Plaintiff's stated purpose for the showing of these films was to depict his life while confined in Veteran's Administration Hospital in Memphis, Tennessee. After viewing the motion pictures, the trial judge denied plaintiff's request on the grounds that such evidence would only be cumulative and would add no additional value to the still photographs already in evidence. There were fourteen still photographs already in evidence showing essentially what the motion pictures showed.
A determination of whether motion pictures are admissible into evidence is largely within the discretion of the trial court. Carvell v. Winn, 154 So.2d 788 (La.App., 3rd Cir., 1963); Luquette v. *873 Bouillion, 184 So.2d 766 (La.App., 3rd Cir., 1966). One of the plaintiff's medical experts, Dr. David Schienberg, identified the photographs as accurately depicting the condition of the plaintiff while in the hospital. The additional evidence of motion pictures would have cumulated evidence already before the jury. The trial judge was evidently of the opinion that the sympathy effect of the additional evidence would outweigh its probative value. This ruling was not an abuse of his discretion.
ITEM 4. The Ronald Johnston testimony.
Likewise, the refusal to allow plaintiff to question his private investigator, Ronald Johnston, who had visited plaintiff in the hospital shortly before trial, was not an abuse of trial court discretion. Johnston was a private investigator who had been hired by plaintiff's counsel to assist him with the preparation of his case. He took the hospital photographs of Ashley that were introduced into evidence. Counsel for plaintiff proposed to have Johnston testify concerning a visit with Ashley shortly before trial. The trial court refused to allow such questioning, not only on the grounds that it would be cumulative, but also because it would require the witness to give an expert opinion. Insofar as his testimony would have supplied verbal description of what was shown on the photographs, it was not needed. Any testimony going beyond that point would have been opinion or hearsay testimony and was properly excluded on those grounds.
ITEM 5. Expert witnesses.
There were several other allegations of trial court error having to do with the competency of expert witnesses to testify and the questioning of these witnesses. The determination of who shall testify as an expert is a matter within the sound discretion of the trial judge. State Department of Highways v. Huson, 166 So.2d 3 (La.App., 2nd Cir., 1964); Carvell v. Winn, 154 So.2d 788 (La.App., 3rd Cir., 1963); Hargis v. Travelers Indemnity Company, 248 So.2d 613 (La.App., 3rd Cir., 1971). Experience alone is enough to qualify a man as an expert. Shaw v. New Orleans Public Service, 188 So. 187 (Orl. La.App., 1939). We find no error in the trial court's rulings recognizing as experts the witnesses whose expertise plaintiff questions. We find no support in the record for plaintiff's allegation that he was not allowed to ask leading questions of these experts.
ITEM 6. Cross-examination of Mrs. Jinks.
Mrs. Jinks, former wife of plaintiff, Ashley, testified on behalf of the plaintiff. Her testimony tended to show that plaintiff was a good provider. On cross-examination, defendants were permitted to use a petition for separation filed by Mrs. Jinks against her former husband in the family court in East Baton Rouge Parish in which the allegation was made that Ashley was not a good provider. This was offered to impeach the testimony of Mrs. Jinks. Plaintiff complains that it was error on the part of the trial judge to permit the use of this petition on the cross-examination for the reason that the petition was not personally verified by Mrs. Jinks.
In our civil procedure a petition is not required to be verified by the party filing it. Declarations made therein amount to full proof against the party. LSA-C.C. art. 2291. Such declaration may be used for impeachment purposes. Succession of Bates, 227 So.2d 19 (La.App., 2nd Cir., 1969). The trial court's permission for the use of the separation petition against Mrs. Jinks for impeachment purposes was correct.
ITEM 7. Alleged misconduct of juror.
Plaintiff asks us to find that the trial court was in error in failing to grant *874 a new trial based on the alleged misconduct of a juror. It is contended that an official of Diamond, one of the defendants, was seen conversing with one of the jurors during a recess. The record is totally silent on this subject. We do not know what transpired. In his brief, plaintiff tells us that there was an intimate conversation between the official of one of the defendants and one of the jurors, and that the official was apprehended by the bailiff and brought before the court. We are told by the defendants that the official was questioned about such an alleged event by the court and that the court having determined that the conversation was innocuous, admonished the official to avoid all contact with the jurors thereafter, and nothing more came of the issue. Without additional facts before this court, it cannot be held that this alleged irregularity or misconduct resulted in any prejudice to the plaintiff. Viator v. Gibert, 206 So.2d 106 (La.App., 4th Cir., 1968).
ITEM 8. Interruption of closing arguments.
Plaintiff's counsel was interrupted during his closing argument by an objection that he was improperly making reference to a book not in evidence. Plaintiff urges that this interruption resulted in prejudice to his client and that the court should have "dressed down" defense counsel.
Counsel for plaintiff was in fact making direct references to a book which had earlier been ruled inadmissible. He made several such references before an objection was made. The objection was good. The trial judge, however, minimized whatever embarrassment or disadvantage an unfavorable ruling on the objection at that juncture might have caused counsel for plaintiff, by simply advising him to: "Go on to something else." There was nothing erroneous about the trial judge's conduct in this instance.
IV. Failure to Inform the Jury of Limits of Various Applicable Insurance Policies
There were five insurers involved, one insuring Diamond, three insuring Nissan, and one insuring Brown. Counsel for plaintiff requested that the jury be informed of the policy limits in each case. The trial judge denied the request, ruling that it was improper to acquaint the jury with the amount of coverage involved.
The majority of the court conclude that the trial court was correct. The basis for this conclusion that a jury should not be informed of the policy limits where liability insurance is involved in a tort action is that this would violate the established jurisprudence that a defendant's ability to pay damages is not a proper subject of inquiry where the purpose is to show his affluence or wealth. Hartman v. Aschaffenburg, 12 So.2d 282 (La.App., 4th Cir., 1943); Winzer v. Lewis, 251 So.2d 650 (La.App., 2nd Cir., 1971). A defendant's ability to pay is a proper subject of inquiry to determine a defendant's lack of ability to respond in judgment, if he is impecunious. Tabb v. Norred, 277 So.2d 223 (La.App.,3rd Cir., 1973) and Williams v. Garner, 268 So.2d 56 (La.App., 1st Cir., 1972). This is a just and practical rule. On the other hand, allowing evidence of a defendant's affluence or wealth to justify a greater award, is unjust. To allow policy limits to go before the jury would undoubtedly lead to the rule that a defendant's ability to pay may be inquired into by plaintiff for all purposes, since there is no logical basis for admitting the amount of insurance coverage and refusing to disclose an individual defendant's financial status.
VI. Informing Counsel Concerning Proposed Jury Instructions
Counsel for plaintiff filed written requests for eighteen special jury instructions. We have studied these special requested charges and compared them to the *875 actual charges given to the jury by the trial court, and it is apparent that all eighteen were substantially incorporated into the actual charges. Nevertheless, counsel for plaintiff assigns as error the failure of the trial judge to inform him prior to closing argument of his disposition of the requested charges.
LSA-C.C.P. art. 1793 provides as follows:
"At the close of the evidence or at an earlier time during the trial as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury.
"A party may not assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objections out of the hearing of the jury."
It is apparent that the literal requirements of Section 1793 were not complied with. The court did not inform counsel of its proposed action upon the requests prior to the arguments. However, counsel did not request the information but embarked upon his argument without making such a request.
There is no Louisiana case dealing with the specific provisions of Article 1793 on which plaintiff's counsel bases this assignment of error. However, the same language in contained in Rule 51, Federal Rules of Civil Procedure, which is the source of Article 1793. The Federal courts have held that the provisions of Rule 51, FRCP which requires:
". . . that counsel be informed by the judge of his proposed action on requests to charge prior to their arguments to the jury, was intended neither as a trap for the judge nor as an indispensable ritual for all cases but as a means for the guidance of counsel in shaping their arguments when such information is needed for their guidance. Consequently, when counsel embark upon their summations without any request for such information, the trial judge may usually infer that they envisage no need for such information and treat the requirement as waived."
Finkle v. N.Y., N.H., and H Railroad Company, 26 F.R.D. 9 (U.S.D.C.C.Connecticut, 1960).
The second paragraph of LSA-C.C.P. art. 1793 provides that a party may not assign as error the failure to give a requested instruction unless he objects to said failure before the jury retires. In this instance, plaintiff did request instructions timely and the trial court failed to inform him prior to argument that the requested special instructions could not be given. Plaintiff did not request the court to pass on his request for special instructions and did not object to the failure of the court to inform as to whether the instructions would be given. Therefore, under the unequivocal terms of Article 1793, plaintiff may not assign error in this regard.
VII. Jury Instructions Relating to Product Liability
The next assignment of error has to do with the exact language of the jury charges pertaining to the liability of the manufacturer to the public. In framing these charges, the trial judge obviously relied upon the decisions of Weber v. Fidelity & Casualty Ins. Co. of New York, 259 La. 599, 250 So.2d 754 and Meche v. Farmer's Drier and Storage Co., 193 So.2d 807 (La.App., 3rd Cir., 1967).
As to the liability of the manufacturer, the trial court gave the following instructions:
"A manufacturer of a product which involved a risk of injury to the user is liable *876 to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff's injuries were caused as a result of that defect.
"A manufacturer of a product which involved the risk of injury to the user to (sic) another by reason of a defect in design or manufacture is liable only when the injured party is without fault, and second, the manufacturer might reasonably have anticipated the injury, and third, the injury is a direct and proximate cause of the defect.
"A plaintiff asserting the liability of a manufacturer for injuries allegedly caused by said manufacturer's defective product, must prove that the product was defective or unreasonably dangerous to normal use and that his injuries were caused by reason of that defect."
The only error ascribed to these instructions is that they fail to refer to "warranty" by name. We find no error in the above instructions. They correctly reflect the substance of the decisions in Meche and Weber. We fail to see how the addition or deletion of a reference to the term "warranty" could have further enlightened the jury as to the applicable law.
VIII. Exhibits in Jury Room
After the jury commenced its deliberations, it sent out word asking for some of the documents that had been introduced. At this point plaintiff made the request that all of the exhibits be sent to the jury room. The trial court denied that request, sending in only those documents specifically requested by the jury. This is alleged to have been error on the part of the trial court.
We conclude that this was not error. LSA-C.C.P. art. 1794 declares that the jury ". . . may take with them any object or document received in evidence which requires a physical examination to enable them to arrive at a just conclusion." There is no suggestion in the quoted language that it is mandatory that all exhibits be physically placed in the jury room, as plaintiff contends. Its language suggests the opposite. Also, for comparison purposes and as indicative of the legislative intent, Code of Criminal Procedure Article 793, states specifically that:

"Upon the request of a juror and In the discretion of the court, the jury may take with it or have sent to it any object or document received in evidence when a physical examination thereof is required to enable the jury to arrive at a verdict." (emphasis supplied)
It was not error for the trial court to refuse to order that all exhibits in the case be put in the jury room.
IX. Manifest ErrorJury Verdict
The next contention is that the jury committed manifest error because there was no reasonable evidentiary basis for the decision by the trial jury to dismiss the suit as to the manufacturer.
Our duty on appellate review requires us to affirm unless the decision on the facts was manifestly erroneous. In reviewing the decision of the trial jury we follow this guideline as expressed in Canter v. Koehring Company, 283 So.2d 716 (La., 1973):
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in *877 the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."
The record presents conflicting testimony and questions of fact only. The specific fact question on which the liability of the manufacturer turned was whether or not on June 11, 1972, there was any defect in the right rear wheel cylinder of the Datsun and whether such a defect, if any, contributed to the happening of the accident. There was testimony by two expert mechanics that they road tested the automobile after it had been repaired following the June, 1972, accident, and that they found no defects in the brakes at that time. Another expert mechanic testified on behalf of the plaintiff that he first saw the Datsun automobile in October of 1972, months after the accident and after the repairs resulting from the accident, and that then there was a defect in the right rear wheel cylinder. This was the conflicting testimony on which the jury had to make its decision of fact.
We find no manifest error in the result reached by the trial jury.
Plaintiff makes the similar complaint that there was no reasonable evidentiary basis for the decision by the trial jury to dismiss the suit as to the retailer, Diamond. Without detailing the testimony, it is sufficient to merely state that on reviewing the entire record in this case we conclude that the plaintiff failed to prove that a defect existed in the Datsun automobile at the time it was sold by Diamond.
X. The Award.
The last issue raised by plaintiff on this appeal is that the trial jury abused its great discretion in awarding him only $36,000.
Plaintiff was only 26 years old when he suffered this accident which rendered him permanently a paraplegic. If there were some way we could justifiably increase this obviously low award, we would do it. It is apparent that the jury also struggled with the problem. Having found liability on the part of Brown and exonerating Nissan and Diamond, the jury knew that only one insurer, Early American Insurance Company, was left in the picture. The jury may have suspected low limits. We have no way of knowing this. The limitation of liability of Early American was only $5,000. Brown testified from the witness stand as to his occupation and means and ability to respond to any judgment rendered against him. The case of Tabb v. Norred, 277 So.2d 223 (La.App., 3rd Cir., 1973) and Williams v. Garner, 268 So.2d 56 (La.App., 1st Cir., 1972) state the principle that the trier of fact can and should consider the impecuniousness of the defendant in making an award, and the impecuniousness of Brown was apparently taken into consideration by the jury in this case.
Considering all the circumstances of this case, the "much discretion" protection afforded the jury concerning the amount of the award requires us to affirm.
The judgment is affirmed, all costs to be paid by plaintiff-appellant.
Affirmed.
YELVERTON, Judge (concurring in part and dissenting in part).
*878 I concur with my colleagues in affirming the judgment of the jury but I disagree with the part of the opinion which deals with "IV. Failure to Inform the Jury of Limits of Various Applicable Insurance Policies". I concur in the result, because I believe that the failure of the trial judge to inform the jury of the policy limits was not prejudicial error but I disagree, and therefore dissent, from the majority's declaration that trial courts should as a matter of law conceal from the jury the policy limits of an insurance defendant before it.
It is my opinion that where either party requests it, the jury ought to be informed of the amount of insurance. In a direct action state such as ours the insurance contract itself is admissible in evidence as the very basis of jurisdiction. Since the existence of insurance coverage is before the jury, there is no reason why a candid revelation of the policy limits ought not likewise to be made so as to completely reveal the interest of the insurer in the outcome of the case.
I do not agree with the majority that there is a danger such a rule will lead to permitting a plaintiff to show an individual defendant's ability to pay. An insurance company's policy does not reflect its ability to pay, only the limits of its liability to pay. On the other hand, the amount of the policy will in many cases directly affect the established right of an impecunious individual defendant to interpose his inability to pay. How can he effectively establish his impecuniousness in a low insurance, high damage situation, when he cannot show the amount of his coverage?
The fear that "insurance verdicts" will result from knowledge of the policy limits has no greater foundation in fact than the fear that "insurance verdicts" will result from the knowledge that insurance exists. If in fact there are verdicts high or low in direct proportion to the amount of insurance, it seems to make no sense at all to turn a jury loose on its deductive skills alone to guide it as to the amount of insurance in a case. The erroneous "insurance verdict" may thus be compounded by the further and possibly even graver error of misjudging the amount of insurance. I think it makes better sense to simply be as truthful to the jury as we expect them to be with us. I think it is better, where the parties request it, to be candid with the jury and tell them exactly what each insurer provides, then combine with that a cautionary instruction that the amount of insurance should not be considered in asessing the award, and that a plaintiff is entitled only to such an award as will reasonably and fairly compensate him for the injuries and damages sustained.
For these reasons I concur in the result reached by the jury and affirmed by us; I disagree with the majority only with respect to informing a jury of the policy limits. It is my opinion that the jury should be informed of the limits of liability of every insurance defendant where any party requests it.