SARTAIN, Judge.
This action was instituted via ordinaria as a foreclosure suit on a mortgage note securing a house and lot purchased by Juanita Jackson (appellant) from All State Corporation (appellee). The note evidencing the obligation was dated June 26, 1973, in the original sum of $10,000.00, payable to the order of “Myself”, executed and endorsed in blank by appellant, payable in monthly installments, including interest and principal, in the amount of $84.92.
Appellant filed an answer admitting execution of the note, mortgage and non-payment; but, she also filed a reconventional demand pleading redhibition justifying rescission of the sale, vitiation of the note and mortgage, damages for mental anguish, hardship, and for attorney fees. Coupled with her reconventional demand was a request for jury trial.
The jury found for the plaintiff and rejected appellant’s demands for rescission of *1090 the sale, damages and attorney’s fees. Thereupon, appellant perfected this devolu-tive appeal. We affirm.
The house was constructed for All State Corporation under a contract with J. A. Johns. Johns subcontracted most of the work to Earl P. Broussard, d/b/a Erskin Enterprises, Inc. It consisted of three bedrooms, a living room-dining room, kitchen, bath, and hall. The cost of construction was $6,450.00. The house and lot were sold to appellant on June 26, 1973, for $10,-000.00. She occupied the home immediately-
Appellant’s complaints are as follows: She states that when the water was turned on, the hot water heater in the attic was improperly connected and flooded the bathroom, staining the walls. There was no hardware on the cabinets in the kitchen. When she attempted to hang drapes, she discovered that one set of windows were uneven. There were no curtain blocks behind the sheetrock walls, hence her curtains were always falling down as the rods pulled from the wall. There were no doorknobs on her daughter’s bedroom door and the doorknobs on the exterior doors to the home did not work properly. Several of the door jambs have pulled apart. The door to her daughter’s room is warped. The wall in the hall has continued to “sink.” The pilot light for the wall heater, located in the hall, continues to burn at an excessive rate, causing the house to remain extremely hot throughout the warmer months. It can not be turned off because of escaping gas. Further, it has scorched the clothes in her son’s bedroom closet, located to the rear of the heater, rendering the closet useless. In addition, one door in the hall was hung so that it opened against the heater and is now seared. The wall around' the tub is now rotted out and the caulking is “gone.” The lavatory in the bathroom is pulled from the wall. There is an electrical outlet near the floor of the linen closet in the bathroom next to the tub, creating a dangerous situation because of its proximity to water. Pipes for the washing machine were not fastened to the wall in the kitchen and shake every time the machine goes into the spin cycle. The kitchen sink commenced to leak shortly after occupancy and now the cabinet and floor beneath it are rotted and decayed. A section of formica on the kitchen counter has “popped up” as well as numerous floor tiles. There is a light outlet in the hall but it contains no switch. All of the paint throughout the interior of the house has “rubbed off” and the walls are practically bare. With respect to the exterior: The doors are decayed and will not lock. Paint has peeled from the trim. Fascia boards have fallen. There is no caulking around the windows and they, together with the doors, constantly leak.
Appellant denies that any of the above defects was the result of excessive wear and tear or abuse by herself or her three children. She acknowledged that she deliberately stopped making the monthly payments and has continued to live in the house for some eighteen months.
Appellant’s expert, William H. Lebo, a licensed building contractor, went through the house room by room and estimated that to correct the faults identified by appellant would cost $1,187.27. His estimate was dated July 15, 1974, approximately thirteen months following occupancy. Pertinent to the issue here is this witness’ admission that a considerable portion of the defects complained of by appellant could have occurred as a result of wear and tear or physical abuse; to wit: The lavatory in the bathroom, caulking around the tub, the door facing around the bathroom door and the interior painting. He was not asked to check on and had no knowledge of the curtain blocks. He did not recall any complaint about the front door. The heater was not on when he made his examination. Some of the windows needed renailing and repainting. But he acknowledged that this was not unusual in a new home. Many items were very minor in nature, costing only a few dollars to repair. He did corroborate appellant’s complaint about the hall light switch, the exterior trim painting, a “crooked window” sill, exterior painting, a bowed wall stud in the hall, loose nails in *1091 some of the windowsills, “loose” formica countertop and kitchen floor tiles. Significantly, however, he did ne+ .borate appellant’s testimony relative to the interior painting, except to say that one bedroom needed repainting. He didn’t notice anything unusual about the painting in the rest of the house.
Appellant called the two contractors. Both stated that standard materials were used in the construction of the house. Both conceded that the absence of a light switch in the hall was a justifiable complaint, that the intended switch was inadvertently covered when the sheetrock was installed. Both agreed that the exterior trim paint should have lasted longer and attributed this condition to an inferior grade of lumber, probably the fault of the lumber supplier. Johns stated that many of appellant’s complaints could have been repaired by him on the spot if he had had a hammer and some nails when he inspected the house just prior to the trial. He attributed most of these complaints to physical abuse and excessive wear and tear.
Mr. Broussard testified that every complaint brought to his attention was remedied. The first complaint was that of the hot water heater. It was corrected and the bathroom repainted. He stated that the hardware on the kitchen cabinets must have been stolen prior to occupancy. When he went to the home to replace them with another set, appellant had already done so. She was reimbursed the cost thereof.
Mrs. Brock, appellee’s office manager, testified that on two and possibly three occasions, soon after occupancy, appellant called her. The first occasion concerned the hot water heater. The second occasion pertained to the cabinet hardware. The third complaint concerned the front door. On each of these occasions she called Mr. Broussard and, having heard nothing further from appellant, assumed that appropriate repairs had been made and that appellant was satisfied. She denied receiving repeated calls from appellant concerning the numerous defects noted above.
While we have listed most, if not all of the complaints enumerated by appellant, we have not endeavored to particularize appel-lee’s response to the same extent. They were gone into in detail before the jury. Obviously, the litigants are poles apart as the conflicts in their respective testimonies indicate.
C.C. Art. 2520 defines redhibition as the “avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.”
In the instant case, no single defect noted above or even those admitted by appellee would have justified a rescission of the sale. However, all or a substantial portion of the complaints noted by appellant would have warranted a rescission if the evidence establishing the same had been sufficient. For it can not be seriously argued that appellant would have purchased such a home. Thus, the issue here presented is one of fact based in large part on the credibility of the witnesses. The jury undoubtedly considered that appellant’s complaints were either exaggerated, not proved, the result of wear and tear, or a combination of the three.
It is apparent to us from a reading of the record that the concessions made by and the indecision of appellant’s expert (Lebo) was a major factor in appellant’s losing cause. He had not visited the home in over a year prior to the trial.
Viewing the testimony as a whole, we are not inclined to hold that the jury committed manifest error in its conclusion. Canter v. Koehring Company, La., 283 So.2d 716 (1973); Ashley v. Nissan Motor Corp. in U.S.A. et al, 321 So.2d 868 (1st La.App., 1975); writs refused, 323 So.2d 478 (La. 1975).
When appellant sought a jury trial she posted bond for costs in the amount of $850.00 with Western Surety Company as surety. Following judgment in the district court, appellee caused the house in question *1092 to be seized and sold to satisfy the judgment. Prom the proceeds of the sale the sum of $604.52 was paid to the Clerk of Court to satisfy costs accrued as of that date. Appellee filed a rule seeking to have Western pay over to it the amount of the bond. The trial judge recalled and vacated the rule and held that the obligation on these costs had been satisfied and Western was not required to submit its entire bond. In doing so, the trial judge stated: “Thus, any judgment against Western would result in payment again of an obligation already paid out of defendant’s property.” We agree. Appellee’s answer to the appeal seeking a reversal on this issue is rejected.
Accordingly, for the above reasons, the judgment of this district court is affirmed at appellant’s costs.
AFFIRMED.